## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOSEPH AMATO, JAMES B. MOORE,
CHRIS LALL and GEORGE SANDOVAL
individually and on behalf of all others similarly
situated,

Civil Action No. 2:18-cv-16118

        Plaintiffs,

v.

SUBARU OF AMERICA, INC., and
SUBARU CORPORATION,

        Defendants.

**CLASS ACTION COMPLAINT
AND REQUEST FOR JURY TRIAL**

        Plaintiffs Joseph Amato (hereinafter "Amato"), James B. Moore (hereinafter "Moore") Chris Lall (hereinafter "Lall") and George Sandoval (hereinafter "Sandoval") (collectively "proposed class representatives") through their counsel, on behalf of themselves, all others similarly situated and proposed classes allege as follows:

### INTRODUCTION

        1.    Subaru Corporation[1] (hereinafter "Subaru") and Subaru of America, Inc. (hereinafter "SoA") (hereinafter collectively referred to as "defendants") withheld material disclosures concerning engine components known to the defendants to be defective and used in the following vehicles: 2009 through and including 2018 model year Impreza WRX and WRX STi (hereinafter "class vehicles" or "class vehicle").[2]  Engines used in class vehicles include but are not limited to engine codes EJ255,

---

[1] Subaru Corporation, a Japanese business entity was formerly named Fuji Heavy Industries, Ltd.  Effective April of 2017 it became Subaru Corporation and assumed all assets and liabilities of its corporate predecessor Fuji Heavy Industries, Ltd.

[2] "WRX" is an abbreviation for World Rally eXperimental.  "STi" is an abbreviation for Subaru Tecnica international, a Subaru activity that develops Subaru racing vehicles.  Since 1993, the defendants invested tens of millions of dollars preparing Impreza factory rally cars to compete in the WRC (World Rally Championship) series.  The cumulative worldwide TV audience in 2016 for WRC broadcasts was more than 700 million viewers. These rallies provide an all-important marketing program for the WRX and WRX STi vehicle sales worldwide by showcasing high performance Subaru

EJ257 and FA20 (hereinafter "class engines" or "class engine").  The proposed class representatives and members of the proposed classes request, monetary damages, including multiple damages where applicable, injunctive relief, court costs and attorney fees against the defendants based upon their breach of express warranty, breach of implied warranty, misrepresentation, unfair and deceptive business practices and unjust enrichment under the laws of New Jersey, New York, Arizona and Indiana together with the Magnuson-Moss Warranty Act.

### CLASS ENGINE INTERNAL DEFECT

2.      Passenger motor vehicle engines should last a minimum of 120,000 miles in a modern automobile such as the class vehicles.  This proposition is demonstrated by the defendants' Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles, other predecessor engines manufactured by the defendants and performance of comparable competitor vehicles.  The internal components of the class engine prematurely fail at low miles as described in this complaint.

3.      Subaru and SoA introduced the class engines in the United States market in late 2007 for the 2008 model year.  Class engines are predisposed to premature engine failure.[3]

4.      Class vehicles are defective with respect to improperly designed and manufactured pistons and an engine management system and PCV (positive crankcase ventilation) system that

---

vehicles that demonstrate rugged durability in international competition.  *See* http://dp.subaru.com.  As described in this complaint, class engines do not have this purported durability.

[3] All 2.5 liter turbo engines manufactured in certain months experienced engine quality control issues requiring SoA to issue an immediate a stop sale order on April 7, 2008 for 2008-2009 Subaru vehicles sold in the United States.  The purpose of the stop sale was to allow Subaru and SoA to investigate "Engine Knocking Noise" affecting the 2.5 liter engines after "[a]n internal investigation confirm[ed] an internal wear issue on the failed units."  Subaru also developed a modification to the Engine Control Module software logic that improved combustion management to reduce ringland failure at higher engine revolutions.

subjects class engines engine to premature catastrophic engine piston ringlands failure (the "Piston Ringlands Defect").[4]

5.     WRX and WRX STi engines are high performance versions of the 2.5 liter displacement EJ series and 2.0 liter FA series engines used in other model Subaru vehicles including but not limited to the Forrester, Legacy and Outback.   These performance modifications in many applications nearly doubled the horsepower for WRX and WRX STi engines over the standard base 2.5 liter and 2.0 engines.[5]   Although the performance modifications created substantially increased power output, class engines did not include necessary internal modifications to prevent damage to the piston ringlands.   This is particularly true since the 2.5 liter engine used for class engines was itself was derived from a lower output earlier production 2.0 liter engine that had forged pistons.[6]   Earlier 2.0 liter WRX and STi engines incorporated more durable and stronger (and more expensive to manufacture) forged pistons.   The 2.0 liter and 2.5 liter high output class engine share substantially similar piston ringland construction but are manufactured differently.   The earlier 2.0 liter STi engine had more durable forged pistons while class EJ and FA engines use more brittle cast pistons.

6.     Inadequate class engine piston ringland durability was caused by casting the class engine pistons from hypereutectic aluminum silicon (Al-Si) alloy.   While this alloy has some strength attributes over conventional cast aluminum pistons, Al-Si pistons and in particular piston ringland are more brittle.   This Al-Si materials selection and cast construction / manufacture method resulted in insufficient strength pistons in class engines.

---

[4] Piston ringlands refer to the engine piston separations between the piston rings.   *See* Figure 1, *infra*, depicting exemplar EJ-25 piston and piston nomenclature.  Figure 2, *infra*, depicts a Subaru EJ-25 piston with damaged ringlands.

[5] EJ25 series engines range in SAE rated horsepower from 165 to 310 depending on the variant.

[6] Interestingly, 2.5 liter WRX and WRX STis sold in Japan and other countries outside of the United States have engines with forged pistons.



**FIGURE 1**
**SUBARU EJ-25 PISTON REMOVED FROM CLASS**
**ENGINE WITH NO DAMAGE TO RINGLANDS**

7.      Another contributing cause to class engine failure was an inadequate PCV system that allowed excessive engine crankcase oil vapors to be introduced into the engine combustion chambers thereby lowering the overall fuel/air octane mixture.  This causes increased combustion forces acting on the piston through a phenomenon know as detonation.  Detonation is a well-known cause of internal engine component damage particularly including piston and piston ringland failure.[7]  *See* Figure 2 depicting class engine piston with damaged ringlands, *infra.*

8.      Failure of class engines due to the Piston Ringland Defect results in sudden power loss and/or stalling that severely compromises the owner's ability to maintain vehicle control.   The defective class engine components and engine management system also causes sudden and catastrophic engine self-destruction as overheated internal parts seize.

9.      The failures in the class engines due to the Piston Ringland Defect pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning and the loss of power-assisted steering and reduced braking caused by lack of engine vacuum if the engine

---

[7] *See generally* https://en.wikipedia.org/wiki/Engine_knocking

stalls.  In class vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering if the engine stalls and the clutch is not immediately disengaged.

10.     The Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles do not contain any maintenance or service information for class engine pistons or piston ringlands that are defective.  A modern passenger vehicle internal combustion engine is reasonably expected by the defendants, the proposed class representatives and proposed class members to last the serviceable life of the vehicle that is in excess of 120,000 miles.[8]  Despite this, class engines in class vehicles often fail at less than 50% of their reasonably expected useful life.[9]



**FIGURE 2**
**SUBARU EJ-25 PISTON REMOVED FROM CLASS**
**ENGINE WITH DAMAGED RINGLANDS**

---

[8] The Owner's Manual and Warranty & Maintenance Booklet materials for class vehicles have maintenance schedules that extend to 120,000 miles. There is no scheduled maintenance or replacement recommended for class engine internal components at issue in this complaint.

[9] It is estimated by one Subaru WRX and WRX STi enthusiast website that 25 percent of all 2.5 liter STi engines experience premature ringland failure.  Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class engines eventually became public information.  Premature class engine failures caused by the Piston Ringland Defect can cost as much as approximately $8,000.00 and $12,000.00 to remedy if a new engine block is required.

**JURISDICTIONAL AND VENUE STATEMENT**

11.     Diversity jurisdiction exists under 28 U.S.C. § 1332(a), (d) and 28 U.S.C. § 1367.  Class jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715, since there are in excess of 100,000 class members and the proposed class representatives and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.  Minimal diversity exists between the parties with residency in different states.  The jurisdictional requirements of the state Magnuson–Moss Act claims alleged herein as set out in 15 U.S.C. § 2310(d)(1)(A) are satisfied by CAFA diversity jurisdiction with respect to such state law claims.

12.     The defendants are persons under this jurisdiction's long-arm statute.  In the United States, SoA acts as the alter ego and/or agent of Subaru as well as the warrantor with respect to the class vehicles.  *In personam* jurisdiction exists over the defendants under this jurisdiction's so-called "long arm statute."  The defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States.  SoA also maintains offices and facilities in the United States including a manufacturing plant in Indiana that has constructed passenger automobiles for more than thirty years.[10]  Subaru corporate officers, engineers and other employees regularly communicate with and visit the SoA's corporate offices in New Jersey and the Indiana assembly plant.  The defendants also conduct continuous and systematic economic activities in this jurisdiction and throughout the United States.  The defendants intentionally and purposefully placed their vehicles and/or components in the stream of commerce in this jurisdiction and throughout the United States.  Subjecting the defendants to *in personam* jurisdiction in

---

[10] *See* http://subaru-sia.wixsite.com/indiana (last checked February 12, 2018). "Subaru of Indiana Automotive, Inc. (SIA), a subsidiary of Subaru Corporation, is home of North American Subaru production. Models built at the Lafayette, Indiana plant include the Subaru Legacy, Subaru Outback and Subaru Impreza. In 2018, the Subaru Ascent will be added to SIA's production line. SIA employs over 5,600 Associates, and every Associate is committed to quality, safety and environmental stewardship."

this jurisdiction does not violate the defendants' due process rights and comports with requirements of fair play and substantial justice.

13.     Venue is conferred by 28 U.S.C. § 1391 as the defendants regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

14.     Plaintiff Amato is an adult individual who leased a new 2016 Impreza WRX STi from an authorized Pennsylvania Subaru dealer in November 2015.  Amato resided in New Jersey at the time of the lease.   Amato's class vehicle required premature replacement of the engine due to the Piston Ringland Defect at 65,000 miles in December January 2017.  Amato spent more than $6,500.00 replacing the class engine together with other incidental expenses.

15.     Plaintiff Moore is an adult individual who purchased a certified pre-owned 2013 WRX from an authorized Subaru dealer in Indiana in November of 2015.  Moore resides in Brownsburg, Indiana.   Moore's class vehicle required premature replacement of the engine due to the Piston Ringland Defect at 66,000 miles in February 2018.  Moore spent more than $7,500.00 repairing the class engine together with other incidental expenses.

16.     Plaintiff Lall is an adult individual who purchased a new 2016 Subaru WRX from Curry Subaru, an authorized Subaru dealer in New York in or about May of 2016.  Lall resides in South Richmond Hill, New York.  In or about March 2018, when the vehicle had approximately 32,000 miles, Bay Ridge Subaru worked on the subject vehicle with respect to the clutch and returned the vehicle to Lall without indicating any issue with the engine piston ringlands.  Upon information and belief, they did a teardown and diagnostic of the vehicle and failed to address the ringlands defect or even advise about it.  However, within 1,000 miles of receiving the vehicle back from Bay Ridge Subaru, in April 2018, when the vehicle had approximately 33,000 miles, the vehicle suffered a catastrophic engine ringlands failure.  Lall demanded that defendant SoA repair the engine under

4

warranty without charge.  Defendant SoA refused warranty coverage.  As a result, Lall was required to have the engine ringland failure repaired at a cost in excess of $6,000.00 and lost use of his vehicle in excess of 2 months.

17.     Plaintiff Sandoval is an adult individual who purchased a new 2018 WRX STi from Auto Nation Subaru of Scottsdale, Arizona, an authorized Subaru dealer in Scottsdale, Arizona in 2018 for approximately $41,000.  Sandoval resides in Goodyear, Arizona.  Although the engine in plaintiff Sandoval's vehicle has not experienced ringlands failure, he has suffered diminution of value as a result of class engine ringlands failure becoming public knowledge.  Sandoval recently attempted to sell his vehicle and has been told by prospective purchaser(s) that because Subaru has publicized the fact that the pistons and piston ringlands required strengthening, a issue which Subaru revealed was fixed in the 2019 version of the WRX STi vehicle, that such purchaser(s) would not want to purchase the earlier class vehicles which did not incorporate engines with the strengthened pistons and ringlands, thus diminishing the value of his class vehicle as a result of the defect.

18.     Defendant Subaru is a duly organized Japanese corporation with a principal place of business in the city of Tokyo, Tokyo prefecture, Japan.  Subaru designed, manufactured and tested the class engine and engine management system incorporated in class vehicles including but not limited to Amato and Moore's respective vehicle.  Subaru drafted and published the Owner's Manual and Warranty & Maintenance Booklet materials that accompanied class vehicles and/or were published on the Internet.  Subaru is the parent company of SoA.

19.     Defendant SoA is a duly organized New Jersey corporation with a principal place of business located in Cherry Hill, New Jersey.  SoA manufactures, imports, distributes and/or sells Subaru motor vehicles including all class vehicles and also acts as the authorized representatives of Subaru in the United States.  SoA operates its national marketing, warranty, consumer relations and engineering offices from its New Jersey facility.  SoA also controls all other aspects of its United States activities from New Jersey including class vehicle importation.

20.     SoA sells and distributes vehicles manufactured by both Subaru and SoA throughout the United States via a network of over six hundred independent authorized dealerships.

21.     SoA drafted and published the Owner's Manual and Warranty & Maintenance Booklet materials that accompanied class vehicles and/or were published on the Internet.  SoA acted, and continues to act, as the warrantor of vehicles constructed by both defendants sold in the United States.

22.     At all relevant times, SoA acted as an authorized agent, representatives, servant, employee and/or alter ego of Subaru performing activities concerning but not limited to advertising, marketing, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Subaru vehicles in the United States, including substantial activities that occurred within this jurisdiction.  Subaru and SoA also share upper echelon corporate managers who operate in dual leadership capacities for each business entity.  There is sufficient overlapping and intertwining of the activities of Subaru and SoA in the United States that the principles of corporate separateness should not be applied.

23.     New Jersey has the most significant relationship to the conduct that gave rise to this litigation since SoA's wrongful activities were orchestrated at its New Jersey headquarters.  New Jersey law should govern all substantive aspects of this litigation.  That conduct includes concealing the class vehicles' defects described in this complaint and systematic activities to deny warranty coverage to defective engine components that should have been replaced under the new vehicle warranty without cost to the class vehicles owner.

## CLASS ACTION ALLEGATIONS

24.     The proposed class representatives bring this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed class and subclasses (or any other class authorized by the Court) defined as follows:

> **Nationwide Class**: All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the United States, its possessions and territories and sustained monetary loss and/or diminution of

class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, the defendants' counsel and all respective immediate family members of the excluded persons and entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**New Jersey Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of New Jersey and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed New Jersey subclass members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**New York Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of New York and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed New York subclass members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**Indiana Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of Indiana and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed Indiana subclass members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**Arizona Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of Arizona and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed Arizona subclass members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described

above.  Also excluded from the proposed class are any and all claims involving personal injury.

**Numerosity of the Class: Fed. R. Civ. P 23(a)(1).**

25.     The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20.  It is estimated there are in excess of approximately 250,000 class vehicles imported into and/or manufactured in the United States.  Although the number, location and identity of all proposed class members cannot be presently ascertained, this information is obtainable through discovery from the defendants.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

26.     Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class.  These issues include but are not limited to:

(a)     Whether class engines contained the Piston Ringland Defect and were defective in materials, workmanship, manufacture, and/or design, so as to subject the engine to premature failure;

(b)     Whether class engines sustained damage directly or indirectly by premature failure of the internal components due to the Piston Ringland Defect;

(c)     Whether class vehicles were sold with an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated incorrect inspection, service and scheduled replacement intervals for the engine;

(d)     Whether the defendants breached their express warranties (including but not limited to the powertrain limited warranty) in that class vehicles were defective as a result of the Piston Ringland Defect with respect to engine materials, workmanship, manufacture and/or design;

8

(e)     Whether the defendants breached their implied warranties in that class vehicles were defective as a result of the Piston Ringland Defect with respect to materials, workmanship, manufacture, or design;

(f)     Whether the defendants intentionally or negligently misrepresented material facts concerning the characteristics of class engines;

(g)     Whether the defendants committed unfair and deceptive business act practices by failing to inform owners of class vehicles prior to purchase and/or during the post-sale express warranty period that class engines were defective as a result of the Piston Ringland Defect and would fail shortly after the warranty period expired, and that this defect posed a significant safety hazard;

(h)     Whether the defendants were unjustly enriched by their warranty breaches and deceptive and/or unfair conduct described in this complaint;

(i)     Whether proposed class members are entitled to injunctive relief pursuant to Rule 23(b)(2);

(j)     Whether the Court should establish a constructive trust funded by the benefits conferred upon the defendants by their wrongful and unlawful conduct; and,

(k)     Whether proposed class members are able to economically afford individual litigation against the defendants.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

27.     The proposed class representatives' claims and defenses are typical of the claims and defenses of proposed class members.  Class claims arise out of ownership or lease of class vehicles as defined in ¶ 1.  The defendants in this proposed action have no claims or defenses unique to or different from the proposed class representatives.

9

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

28.      The proposed class representatives currently have no conflicting interests with any other proposed class member.   The proposed class representatives will fairly and adequately protect the interests of the proposed subclasses.   The proposed class representatives' claims and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence.   Proposed class counsel have, in aggregate, over 60 years of experience concentrating in complex automotive products liability, and both have been appointed class counsel in other proceedings.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

29.      Maintenance of a class action in one court is the most economical procedural device to litigate the class vehicles claims for class vehicles owners and the defendants.   Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

30.      Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

31.      There is a substantial likelihood that the defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

32.     Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

## DEFENDANTS' KNOWLEDGE OF THE CLASS ENGINE DEFECT

**Complaints To The National Highway Traffic Safety Administration**

33.     The National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") maintains a database of complaints filed by consumers concerning defects in their respective motor vehicles and vehicle equipment monitored by defendants' quality control personnel.  The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats." *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed November 16, 2017) ("If you think you have a problem, we want you to tell us about it.").  A sampling of the numerous complaints on record submitted by owners of class vehicles and reported to the NHTSA demonstrates that the class vehicle engine defect is widespread and constitutes an unreasonable safety hazard:[11]

**Date Complaint Filed:** 6/15/2009                                                 **Date of Incident:** 01/29/2009

**Component(s):** ENGINE AND ENGINE COOLING                    **NHTSA ID Number:** 10273870

**Consumer Location:** ORLANDO, FL

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
| --- | --- | --- |
| SUBARU | IMPREZA STI | 2008 |

**Details**                                                                                      **0 Available Documents**

**Crash:** No            **Fire:** No            **Number of Injuries:** 0       **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896X8L...

_____

[11] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is only added to a public NHTSA database after removal of all information from complaint fields that personally identify a complainant.  NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed multi-page contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA.  There are penalties for submitting false statements.

**SUMMARY:**

I OWN A 2008 STI AND HAVE JUST UNDER 6,000 MILES ON THE ODOMETER. I BOUGHT THE VEHICLE NEW WITH JUST UNDER 200 MILES ON IT IN DECEMBER OF 2008. IN JANUARY OF 2009, I BEGAN TO SEE WHITE SMOKE COMING OUT OF MY EXHAUST ON STARTUP. I HAD JUST OVER 1,200 MILES AT THE TIME. MY ENGINE FAILED SUFFERED A FAILURE AT JUST UNDER 2,000 MILES. SUBARU REPLACED THE ENGINE UNDER WARRANTY AND SENT ME ON MY WAY. FAST FORWARD TO JUNE OF 2009 AND NOW I'M BEING TOLD MY ENGINE HAS AGAIN FAILED DUE TO THE PISTON RINGLANDS CRACKING AND BREAKING OFF. THIS IS A WIDELY REPORTED ISSUE FROM 2008 STI OWNERS AND WOULD SEEM TO INDICATE A POSSIBLE DEFECT IN THE PISTON DESIGN. *TR

*       *       *

**Date Complaint Filed:** 8/03/2011                        **Date of Incident:** 6/10/2011

**Component(s):** ENGINE AND ENGINE COOLING          **NHTSA ID Number:** 10416892

**Consumer Location:** JACKSONVILLE, FL

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
| --- | --- | --- |
| SUBARU | IMPREZA STI | 2008 |

**Details**                                      **0 Available Documents**

**Crash:** No       **Fire:** No       **Number of Injuries:** 0       **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

THE CAR WAS SMOKING ON COLD STARTS ONLY. PISTON # 4 RINGLAND CRACKED AT 33,000 MILES ON THE CAR. SHORTBLOCK HAD TO BE REPLACED. *KB

*       *       *

**Date Complaint Filed:** 07/28/2010              **Date of Incident:** 05/05/2008

**Component(s):** ENGINE AND ENGINE COOLING          **NHTSA ID Number:** 10345791

**Consumer Location:** CLEVELAND, MO

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
| --- | --- | --- |
| SUBARU | IMPREZA STI | 2008 |

**Details**                                      **0 Available Documents**[12]

**Crash:** No       **Fire:** No       **Number of Injuries:** 0       **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Details**                                      **0 Available Documents**

**Crash:** No       **Fire:** No       **Number of Injuries:** 0       **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89678L...

---

12

**SUMMARY:**

THE SUBARU STI SERIES KNOWN AS THE GR IS PRONE TO BREAKING PISTON RINGLANDS IF
DETONATION EVER OCCURS, WHICH HAPPENS EASILY ON THIS ENGINE, WHICH IS NOW TUNED
FOR MORE POWER YET FEWER EMISSIONS. THE RINGLAND BREAKAGE RESULTS IN POWER LOSS
AND EXTREME OIL CONSUMPTION DUE TO BLOWBY AND IF NOT NOTICED IN TIME WILL LEAD TO
ENGINE SEIZING. IF DRIVEN AGGRESSIVELY ENOUGH, THIS SEIZING DUE TO OIL LOSS CAN HAPPEN
IN AS FEW AS 10 MINUTES. IT IS ALSO POSSIBLE FOR THE RINGLAND BREAKAGE TO BE SO SEVERE
THAT THE ENGINE SPRAY-COATS A LARGE SECTION OF ROADWAY, MAKING FOR THE EQUIVALENT
OF A BLACK ICE CONDITION FOR OTHER TRAFFIC. A POTENTIAL SAFETY HAZARD I'M NOT AWARE
OF HAPPENING WITH THIS VEHICLE YET BUT STILL POSSIBLE IS NOT ONLY THE LOSS OF CONTROL
SHOULD THE ENGINE SEIZE AND THE DRIVER NOT BE MECHANICALLY SAVVY ENOUGH TO KNOW
DISENGAGING THE CLUTCH WILL GIVE HIM BACK SOME CONTROL AND REDUCE THE CHANCES OF
BEING REAR-ENDED WHEN THE CAR TRIES TO STOP VERY RAPIDLY WITHOUT THE BRAKES AND
THEREFORE THE BRAKELIGHTS BEING USED. DESPITE THE LARGE NUMBERS OF THESE FAILURES
BEING REPORTED, SUBARU DENIES A PROBLEM EXISTS. I HAVE ALL OF THE PARTS FROM MY
ORIGINAL FAILED ENGINE WHICH ALSO SHOWED OTHER ASSEMBLY PROBLEMS. I WILL HAVE THE
PIECES OF MY 2ND ENGINE WHEN I PICK THE CAR UP SOON. MANY MECHANICS ARE OF THE
OPINION MANY OF THESE ENGINES HAVE BROKEN RINGLANDS AND THE OWNERS DON'T KNOW IT.
WE ALSO FEEL THE PROBLEM IS AGGRESSIVE OEM TUNING WHILE USING WEAK CAST PISTONS AS
IT'S DETONATION, EVEN A SINGLE EVENT, THAT BREAKS THEM. AND IT'S INCONCEIVABLE AN
ENGINE WITH THIS DAMAGE WOULD PASS AN EPA EMISSIONS TEST. *TR

*                              *                              *

**Date Complaint Filed:** 12/09/2009                                    **Date of Incident:** 04/15/2009

**Component(s):** ENGINE AND ENGINE COOLING                             **NHTSA ID Number:** 10295147

**Consumer Location:** UNCASVILLE, CT

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                                                             **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896228L...

MY PISTON #4 HAD RINGLAND FAILURE OF BOTH RINGLANDS ON SAID PISTON IN MY 2008 SUBARU
WRX STI. *TR

*                              *                              *

**Date Complaint Filed:** 03/04/2009                                    **Date of Incident:** 01/20/2009

**Component(s):** ENGINE AND ENGINE COOLING                             **NHTSA ID Number:** 10260756

**Consumer Location:** BAYVILLE, NJ

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA | 2008 |

**Details**                                                             **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896X8L...

**SUMMARY:**

SMOKE COMING FROM THE EXHAUST, ROUGH IDLE, OIL CONSUMPTION WERE MY FIRST SIGNS.

THE DEALER WOULDN'T DO A COMPRESSION CHECK ON THE MOTOR SINCE THERE WAS NO CHECK
ENGINE LIGHT ON, SO I HAD TO PAY WITH MY OWN CASH AND TAKE IT TO A PRIVATE SHOP AND
FOUND OUT THAT IN FACT CYLINDER #2 HAD A SHOT RINGLAND. THEY REPLACED THE PISTON BUT
THE MOTOR DOESN'T SEEM TO BE RIGHT STILL SINCE I HAVE A CAR THAT WAS INVOLVED IN A
"STOP SALE" THAT INVOLVED SOME ENGINES HAVING SOME DEBRIS IN THE MOTOR AND WAS
CAUSING KNOCKING AND THROWING BEARINGS. SUBARU SHOULD HAVE REPLACED THE SHORT
BLOCK BUT DIDN'T. *TR

      *             *             *

**Date Complaint Filed:** 10/28/2009                                   **Date of Incident:** 10/01/2009

**Component(s):** ENGINE AND ENGINE COOLING                     **NHTSA ID Number:** 10290169

**Consumer Location:** IRVINE, CA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                                                 **0 Available Documents**

**Crash:** No            **Fire:** No            **Number of Injuries:** 0       **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89618L...

**SUMMARY:**

AT 15,500 MILES, MY 2008 SUBARU STI EXPERIENCED A RINGLAND FAILURE ON THE #4 PISTON. THIS
WAS VERIFIED VIA A COMPRESSION/LEAKDOWN TEST. A LONGBLOCK REPLACEMENT WAS
APPROVED BY SUBARU OF AMERICA. MY MAIN CONCERN, WITHOUT TAKING ENGINE COMPONENTS
OFF, THIS MILD CRACKED RINGLAND WAS ALMOST UN-DETECTABLE. THERE WAS VERY LITTLE
DEGRADATION IN PERFORMANCE, FOR RUNNING ON 3.5 OF 4 CYLINDERS. IN ADDITION, MY
MECHANIC ALSO FOUND FUEL IN THE OIL PAN. *TR

      *             *             *

**Date Complaint Filed:** 03/04/2009                                    **Date of Incident:** 03/01/2009

**Component(s):** POWER TRAIN                                         **NHTSA ID Number:** 10260749

**Consumer Location:** UNKNOWN

**Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA | 2008 |

**Details**                                                   **0 Available Documents**

**Crash:** No            **Fire:** No            **Number of Injuries:** 0       **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

ENGINE STARTED STUTTERING AND WOULD ALMOST DIE WHEN TRYING TO ACCELERATE, THEN
STARTED BLOWING SMOKE OUT TALE PIPE. CAR HAD 3400 MILES. DEALER DIAGNOSED AS
RINGLAND/PISTON FAILURE. *TR

      *             *             *

**Date Complaint Filed:** 11/03/2009                                    **Date of Incident:** 10/17/2009

**Component(s):** ENGINE AND COOLING                                   **NHTSA ID Number:** 10290784

14

**Consumer Location:** WILLIAMSPORT, PA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2009 |

**Details**                                                                         **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89609L...

**SUMMARY:**

PISTON RINGLAND FAILURE AFTER 10K MILES ON BRAND NEW 2009 SUBARU IMPREZA STI. ENTIRE
ENGINE BEING REPLACED BY SUBARU UNDER WARRANTY. *TR

* * *

**Date Complaint Filed:** 07/22/2010                          **Date of Incident:** 05/14/2010

**Component(s):** ENGINE                                      **NHTSA ID Number:** 10344766

**Consumer Location:** FALLS CHURCH, VA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZZA | 2010 |

**Details**                                                                         **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR8H69AL...

**SUMMARY:**

BEFORE THE FAILURE WHITE SMOKE CAME OUT THE TAILPIPE AND THE ENGINE WAS HESITATING.
PISTON #4 HAD A FAILED RINGLAND CAUSING THE ENGINE TO FAIL. TO CORRECT THE FAILURE THE
ENGINE HAD TO BE TAKEN APART AT THE DEALER AND HAVE NEW PARTS INSTALLED. THE CAR WAS
OUT OF MY POSSESSION FOR TWO WEEKS. THE CAR HAD ONLY ~8000 MILES ON IT AND IT
APPEARS TO BE A VERY COMMON PROBLEM ON 2008-2010+ SUBARU IMPREZA STI'S. *TR

* * *

**Date Complaint Filed:** 07/25/2010                          **Date of Incident:** 02/22/2010

**Component(s):** ENGINE                                      **NHTSA ID Number:** 10345175

**Consumer Location:** WAPPINGER FALLS CHURCH, NY

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZZA STI | 2008 |

**Details**                                                                         **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89698L...

**SUMMARY:**

IN FEBRUARY 2010, I PURCHASED A 2008 SUBARU IMPREZA STI FROM A SUBARU DEALERSHIP WITH FACTORY WARRANTY AND I PURCHASED AN EXTENDED FACTORY WARRANTY. ONCE I BEGAN GETTING USED TO THE CAR I NOTICED THERE WAS AN ISSUE. WHEN I WOULD ACCELERATE THERE WOULD BE CONSTANT "DEAD SPOTS" IN THE POWER BAND THROUGH OUT THE RPM RANGE. AFTER MULTIPLE TIMES OF BRING THE CAR IN FOR REPAIR THE DEALERSHIP COULD NOT FIGURE OUT THE PROBLEM. BUT I BEING VERY CAR SOCIAL ON THE INTERNET I FOUND THAT MANY AND I MEAN MANY PEOPLE WERE HAVING THE SAME ISSUE WITH THE ACCELERATION OF THE VEHICLE AND SOME HAD COME TO FIND OUT THAT THERE MOTORS PISTONS "RINGLANDS" WERE CRACKED AND THE CYLINDER WAS LOSING COMPRESSION. AFTER MULTIPLE SERVICES AS EXPLAINED BEFORE SUBARU FINALLY FOUND THAT MY MOTOR ALSO HAD A "RINGLAND" FAILURE! THE DEALERSHIP REPLACED THE BOTTOM END OF THE MOTOR AND I RECEIVED MY CAR BACK. IT RAN GREAT I KNEW THAT'S HOW IT SHOULD HAVE FELT IN THE FIRST PLACE.BUT NOW AROUND 3000 MILES LATER THE SAME ISSUE IS BACK AGAIN! IT IS MY WORRY THAT I GO TO PULL OUT OF A SIDE ROAD EXPECTING THE CAR TO BE ABLE TO MAKE IT OUT, AND I GO, BUT THE CAR IS BOGGING DOWN AND IS STRUGGLING TO GET UP TO SPEED AND THE OTHER CAR HAS TO JAM ON THERE BREAKS OR THEY END OF REAR ENDING ME CAUSING AN EVEN BIGGER PROBLEM.THE SAME COULD BE SAID FOR EXIT ENTRANCES ONTO HIGHWAYS. AFTER RESEARCHING ON THE INTERNET I COME TO FIND OUT THAT THIS PROBLEM HAS BEEN PLAGUING SUBARU OWNERS FOR YEARS NOW AND SUBARU HAS DONE NOTHING TO FIX THIS ISSUE. AND THIS DOES NOT ONLY EFFECT SUBARU IMPREZA STI OWNERS ONLY BUT CAN ALSO BE FOUND IN THE MODELS SUCH AS THE WRX, OR OUTBACKS DE TO SIMILAR ENGINE DESIGNS. I BELIEVE SUBARU IS TURNING A BLIND EYE TO HOW MUCH OF AND ISSUE THIS IS AND HOW BIG AN ISSUE THIS COULD CAUSE. I READ THAT MOST CAR COMPANIES WHEN THEY HAVE A WIDESPREAD ISSUE AS EXPLAINED THEY COMPARE THE COST OF A RECALL TO COST OF PER CAR ISSUES AND THEY GO WITH THE CHEAPER BUT THIS IS A MAJOR PROBLEM NEEDS RESOLUTION. *TR

\*                    \*                    \*

## Redesign of Class Engine Components and Management System

34.     EJ255, EJ257 and FA class engines have been subject to constant upgrades in performance since their introduction without corresponding modifications to engines internal components to handle the more than considerable horsepower and torque increases, creating a more powerful engine output than the materials were originally meant to handle.  As a consequence of using unmodified stock materials from the standard 2.5 liter base engine in WRX and WRX STi more powerful high output applications, class engines cannot and do not tolerate these performance increases without predictable premature internal component failure at the engine piston ringlands.

35.     Predecessor EJ255, EJ257 and FA engines (and other Subaru engines including the 2.0 liter WRX and STi engines) also experienced premature piston ringland failures.  In an effort to solve this issue, which was well known to Subaru, without spending hundreds of millions of dollars to redesign and retool the engine, the defendants experimented with different PCV system configurations. Other attempted modifications included changes to engine management system mapping in an attempt to reduce engine knock that increases forces acting on the piston and ringlands.  These attempted

16

modifications demonstrate that there was a continuing problem with the EJ255 and 257 engines since their introduction in early 2000 and FA class engines introduced in 2015 that has yet to be fully resolved.

36.     On May 24, 2018, the defendants announced in their press release and consumer advertising that the 2019 model year WRX STi was "[p]owered by a 2.5-liter turbocharged BOXER engine, the WRX STI increases horsepower to 310 with the help of a new air intake and high flow performance exhaust. A **retuned ECU and stronger pistons** also contribute to the increased engine performance." (emphasis added).[13]   This admission confirms that the WRX and WRX STi class engines had existing insufficient strength pistons because a mere 1.6% increase in engine horse power wouldn't require higher strength pistons given dynamic factor of safety overload design considerations.   Some commentators on Subaru WRX and WRX STi enthusiast websites have modified the Subaru advertising slogan "Love. It's what makes a Subaru, a Subaru" to "Ringland failures. It's what makes a Subaru[,] a Subaru."

37.     Governmental regulations exacerbated class engine durability and performance issues with increasingly difficult-to-satisfy EPA passenger vehicle emission standards and fuel economy requirements.   In response, the defendants adjusted class engine management systems to run leaner air-fuel mixtures and modified other engine operation parameters that further strained the already overstressed internal engine components of the class vehicles including the piston ringland bearing surfaces.

38.     Prior to manufacturing and then distributing a new part, defendants perform substantial field inspections, testing and quality review of vehicles in service to determine the root cause and diagnosis of a problem.   Following this analysis, draft and final specifications are prepared and sent out to bid.   This protocol takes at least twelve months of lead-time under normal circumstances.   The

---

[13] The referenced Subaru press release accompanies this complaint as Exhibit A.

defendants, therefore, knew or should have known no later than early 2008 that the engines in class vehicles were defective and would prematurely fail.

39.     For example, in SoA's New Jersey facility, a Product Safety Manager is assigned to various components including the defective components discussed in this complaint.  The Product Safety Manager's responsibilities include monitoring field information, NHTSA and DOT information to "quickly identify and isolate potential Subaru 'safety' issues and assist in determining Product Safety Escalation and taking field action" on any issues identified.  SoA also employs Field Service Engineers "to proactively monitor and investigate the product quality and effectiveness . . ." and assist retailers with difficult diagnosis and repairs, "lead[ing] root cause field investigations."   In addition, SoA maintains a Quality Assurance Group in New Jersey which seeks to "summarize customer feedback from Customer Retailer Service (CRS) data, warranty claims" and engage in "data mining and extracting [of] information to identify trends for seasonality, location, type of defects and attributes and a Field Quality Assurance Data Specialist to support analyzing of claims, quality monitoring and creation of quality monitoring reports and field reports. All of these processes were intended to and, in fact, did, result in early notice to defendants of the Piston Ringland Defect.

**Other Sources of Defendants' Knowledge of Class Engine Defects**

40.     In addition to the above sources, the defendants also would have acquired knowledge no later than early 2008 that class engines were defective due to the Piston Ringland Defect through: (1) Monitoring of warranty claims where the original class engine was replaced under the new car warranty as authorized by SoA and verified by subsequent parts audits and computerized vehicle repair history; (2) Teardowns and inspections of defective class engines replaced under warranty to determine its failure mode (for reimbursement to the various defendant entities by the component part manufacturer) and analysis of whether to modify the existing engine materials, workmanship, manufacture, and/or design; (3) Sales and distribution of replacement engines to authorized Subaru vehicle dealerships and independent repair facilities; (4) Internet communications on Subaru vehicle

enthusiast and owners' websites[14] and other consumer forums monitored by the defendants; (5) Information concerning revisions made to subsequent engine specifications and materials; (6) Long term durability and performance testing conducted in actual operating environments in the United States; and, (7) Communications with class vehicles owners who experienced premature engine failure.

## TOLLING OF THE LIMITATIONS PERIOD

41.     The fraudulent conduct of the defendants tolls any applicable statutes of limitations since the fraudulent misrepresentations concerning the true cause of then Piston Ringland Defect failures in class vehicles was an inherently unknowable fact given the technical nature of the class vehicles materials, workmanship, manufacture, and/or design defects.

42.     Class vehicle owners do not possess the requisite technical skills in automotive engineering to discern the materials, workmanship, manufacture, and/or design defects in their vehicles or the requisite technical skills to surmise the proper vehicle maintenance, maintenance intervals and scheduled replacement of critical systems for class vehicles.

43.     The statutory and case law of New Jersey, New York, Arizona and Indiana together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class vehicles because of the defendants' fraudulent conduct, including but not limited to concealment of class vehicles defects and omission of material facts.

44.     Proposed class members relied on the defendants' fraudulent misrepresentations concerning the cause of class engine failures and therefore delayed bringing suit against the defendants.  These misrepresentations relate to the fact that, in reality, class engines were failing due to materials, workmanship, manufacture, or design defects.  The defendants, however, fraudulently

---

[14] One such Internet site managed by and for Subaru WRX and STi enthusiasts is North American Subaru Impreza Owners Club.  *See* forum entitled "How to Avoid Blown Ringlands in your Turbo Subaru." This forum has over 18,00 views (last checked November 10, 2018) and can accessed here:  https://forums.nasioc.com/forums/showthread.php?t=2732312&highlight=ringlands.    Another article at this site entitled "EJ255 / EJ257 Ringland Failure Article" (last checked November 10, 2018) is at "https://forums.nasioc.com/forums/showthread.php?t=2850139&highlight=ringlands.

attributed the failings of class vehicles engines to other factors and/or exculpating conditions for which the defendants had no responsibility.

45.     The defendants are estopped from asserting that statutes of limitations were running for the duration of time class members relied on the defendants' fraudulent representations.

46.     The defendants are equitably estopped from asserting the statutes of limitations have run against the claims of class members.

## FURTHER ALLEGATIONS

47.     The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representatives and proposed class members the Piston Ringland Defect in class engines even though the defendants knew or should have known of design, materials and manufacturing defects in class vehicles due to defendants' testing of class engines.

48.     The defendants had actual knowledge that the Piston Ringland Defect was causing extensive irreversible premature performance degradation in class engines shortly after production of class vehicles commenced.   The defendants engaged in extensive field research and quality investigations and analysis before revising the specifications for the original defective engine prior to 2008, rebidding the new engine for production and manufacturing and distributing the new engine in or about 2008.  In addition, defendants have been, and continue to be, under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them.  The defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

49.     The defendants failed to inform class vehicle owners and lessees prior to purchase or lease or during the express warranty period that their engine was defective as a result of the Piston Ringland Defect and would fail shortly after the express warranty period expired.  The defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of the Piston Ringland Defect in the class engine.

20

50.     The defendants also failed to inform class vehicles owners at the time of purchase that the engine in their class vehicles' engine had been inadequately tested prior to placing the car in production and the time of vehicle sale.

51.     The defendants also failed to inform class vehicle owners of the Piston Ringland Defect in engine materials, workmanship, manufacture, and/or design while the class vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty.[15] Specifically covered by this powertrain limited warranty were the engine, engine block and all internal engine components.   This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers from the date the vehicle was delivered to the first retail purchaser.

52.     The defendants knew or should have known in early 2008 (the date indicative of a design and/or manufacture change) that class engines were experiencing premature engine failures as a result of the Piston Ringland Defect.   Despite this knowledge, the defendants continued to sell class vehicles with an engine that was defective.   This knowledge is imputed to all defendants because SoA was monitoring warranty claims and class vehicles performance in the United States, and reporting back to its parent company located in Japan.

53.     The proposed class representatives and proposed class members had valid and binding warranties and contracts with the defendants and were reasonably expected by the defendants to use their respective class vehicles in the manner in which passenger motor vehicles were used.

54.     The proposed class representatives and proposed class members complied with all warranty and contractual obligations including all warranty, breach of warranty notices, maintenance

---

[15] Class vehicles were accompanied by a basic warranty of "3 years or 36,000 miles, whichever comes first."   Class engines were covered by the Powertrain Limited Warranty that promised "any repairs needed to correct defects in "material or workmanship" for "5 years or 60,000 miles, whichever comes first" to the "engine block and all internal parts ...   These warranties are made by Subaru of America, Inc. ... "

and product use obligations for their respective class vehicles.  The proposed class representatives and proposed class members operated their class vehicles under normal anticipated conditions in non-commercial environments.

55.     The defendants timely received the proposed class representatives' breach of warranties notice through authorized representatives and suffered no resulting prejudice.  The proposed class representatives contacted SoA directly and/or through an authorized dealership.

56.     The proposed class representatives and proposed class members were informed by representatives of SoA that SoA would not provide assistance in replacing engines incorporated in class engines or reimbursing replacement costs because their vehicles were outside of the express warranty period.

57.     The defendants refused to fully reimburse or compensate the proposed class representatives for vehicle engine repair expenses caused by the Piston Ringland Defect or provide a suitable substitute or replacement vehicle.  Although their respective vehicles' engine failures occurred outside the unilateral express warranty period (which was not bargained for prior to purchase), the proposed class representatives' class vehicle exhibited unmistakable symptoms (known only by the defendants) of degradation and impending premature failure within the express warranty period as described in this complaint.

58.     Despite actual and constructive knowledge of the Piston Ringland Defect, the defendants failed to cure class vehicles defects within the express warranty period and thereby breached the terms of the express warranty.

59.     Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending engine failure.  This information, however, was well known to the defendants, but not revealed.

60.     The proposed class representatives relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the defendants at the time of

22

purchase, including but not limited to the useful and expected life of the engines incorporated in class engines and the recommended class vehicles maintenance program.

61.    The defendants' misrepresentations, omissions and fraudulent statements were received by the proposed class representatives and proposed class members prior to and at the point of their class vehicles purchase.  These representations, omissions and fraudulent statements were made by Subaru vehicle dealers referencing publications concerning class vehicles including the Owner's Manual and Warranty & Maintenance Booklet materials.  The representations created a reasonable belief that the useful life expectancy of the engine in the class vehicles without a major failure was in excess of 120,000 miles.  These representations specifically related that the class engine's piston maintenance consisted of following instructions for recommended engine oil and change intervals.

62.    The defendants actively concealed the true reasonably expected duration of the class engine's pistons from the proposed class representatives and all class vehicles purchasers.  The defendants intentionally failed to inform class vehicles purchasers that class vehicles incorporated the Piston Ringland Defect that would prematurely fail within the reasonably expected durational operating period.

63.    The defendants intentionally failed to inform class vehicles purchasers or lessees that the class engine incorporated in class vehicles results in higher operational costs than alternative conventional mechanical engine driven engines or other competitive technology because the class engine prematurely fails within the reasonably expected useful life of an engine as a result of the Piston Ringland Defect.

64.    The defendants actively and fraudulently concealed the existence of the engine defects (including defects covered under class vehicles warranties concerning materials and workmanship) and that the Owner's Manual and Warranty & Maintenance Booklet accompanying class vehicles incorporated improper maintenance recommendations and maintenance intervals including the replacement of the engine.

65.     The proposed class representatives and class members did not learn that their respective class vehicles engine was defective until after their engines failed.

66.     The defendants' customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of defects in class vehicles although the service representatives received hundreds of consumer complaints that the engines in class vehicles prematurely failed as a result of the Piston Ringland Defect.   The defendants' employees falsely represented that certain pretexts for which the defendants were not responsible as the basis for the failures that were in fact caused by an otherwise warranted material defect in the engines.   They falsely stated that defendants were not responsible for the resulting class vehicles engine failures and/or denied the existence of the known class vehicles defects.

67.     Subaru vehicle authorized dealers (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicles engine failures) improperly blamed premature engine failures on certain conditions for which the defendants would not be responsible and/or denied the existence of the Piston Ringland Defect in the engine.

68.     The defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that class vehicles were defective with respect to their engine, and that the engine suffered from extensive irreversible premature performance degradation during the warranty period caused by the Piston Ringland Defect and did not have a normal and/or reasonable useful life before sales of class vehicles commenced in the United States.   This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed class representatives and proposed class members.   The proposed class representatives and proposed class members were ignorant of this technical information through no fault of their own.

69.     The defendants acted to conceal the Piston Ringland Defect during the warranty period so that repair costs would be shifted to the proposed class representatives and proposed class members once the warranty expired and the class engine failed.

24

70.     The defendants' knowledge of class vehicles' Piston Ringland Defect was derived from warranty claims, field inspections, quality assurance engineer analysis, customer complaints and monitoring of performance of class vehicles by SoA quality assurance employees.  Additionally, the number of replacement engines and subsequent engine revisions would have placed the defendants on notice of these engine defects.  The defendants elected to place into the stream of commerce class vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the engine.

71.     Additional information supporting allegations of fraud and fraudulent conduct is in the control of the defendants.  This information includes but is not limited to technical root cause analyses, communications with class vehicles owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' engine contained the Piston Ringland Defect.

Material information fraudulently concealed and/or actively suppressed by the defendants includes but is not limited to the Piston Ringland Defect defects described in the preceding paragraphs and throughout this complaint.

72.     Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class representatives and proposed class members) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability.  In fact, class vehicles actually contained the known engine Piston Ringland Defect described in this complaint that would increase vehicle-operating costs by thousands of dollars.

73.     The defendants (and particularly the sales and marketing executives at SoA) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 120,000 miles or ten years before experiencing engine failure.

74.     Material information was fraudulently concealed and/or actively suppressed in order to protect the defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit Subaru brand disparagement.

75.      The defendants had a duty to disclose to class vehicles owners that there were materials and manufacture defects in class vehicle class engines.

76.     This duty arose because the defendants knew that the Piston Ringland Defect existed in the class vehicles and inaccuracies in the supplied owner's materials that affected vehicle operation, operating costs and safety while class vehicles owners were not, and could not reasonably be, cognizant of these defects and dangers.

77.     The defendants continuously and affirmatively concealed the actual characteristics of class vehicles from the proposed class representatives and other purchasers.  The defendants breached their affirmative duty of disclosure to class vehicles owners (and particularly to owners who inquired as to the cause of class vehicles engine failures).[16]

78.     The defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in class vehicles and omissions in accompanying Owner's Manual and Warranty & Maintenance Booklet materials.

79.     Uniform Commercial Code § 2-302  (as adopted by New Jersey, New York, Arizona and Indiana) entitled "Contract or clause unconscionable" states in relevant part:

(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

---

[16] Since unexpected engine failure is a serious safety issue particularly on limited access highways, the defendants had an affirmative duty to disclose the vehicle defects together with associated risks.  Each of the named plaintiffs in this proceeding experienced dangerous circumstances when their respective class engine unexpectedly quit and the engine entered partial or full shutdown mode.

(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

80.     The warranties accompanying class vehicles were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that class vehicles contained the Piston Ringland Defect, the inability of class vehicle purchasers or lessees to bargain with the defendants to increase durational warranties, lack of knowledge, lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored the defendants particularly where there were class vehicle defects known only to the defendants and the warranty unfairly shifted repair costs to consumers when class vehicles' engines prematurely fail during their reasonably expected life), absence of effective warranty competition and the fact that class vehicles fail with substantially fewer miles of operation than competitor vehicles from other manufacturers or other models manufactured by the defendants.

81.     Purchasers of class vehicles reasonably expect vehicles to function well in excess of the class vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers of class vehicles were led to believe by the defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was in excess of 120,000 miles and there was no scheduled inspection, maintenance or maintenance for the engine within this period.

82.     Given the conduct of the defendants and the materials, workmanship, manufacture, and/or design defects in class vehicles (that the defendants knew were inherently defective prior to the time of sale), the durational limitations of the warranties are oppressive, unreasonable and

unconscionable because the warranty disclaimers of the proposed class representatives and proposed class members were neither knowing nor voluntary.

83. The proposed class representatives and proposed class members had an absence of any meaningful choice in the purchase of class vehicles and the contractual terms were unreasonably favorable to the defendants since the defendants were fully aware of the presence of the Piston Ringland Defect in the class vehicles that substantially increased class vehicles' operating costs. The proposed class representatives and proposed class members were unaware of the Piston Ringland Defect in the class vehicles at the time of purchase.

84. The bargaining position of the defendants for the sale of class vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representatives and proposed class members. This is because the defendants knew there were defects in class vehicles affecting vehicle-operating costs.

85. The defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that class vehicles were inherently defective and dangerous and had been inadequately tested.

86. The defendants knew defects in class engine components would cause certain expensive repair failures within one-half of the useful expected life of the class vehicles' engine. The defendants artificially limited the duration of the warranty period to avoid performing engine warranty repairs in order to maximize profits through the sale of defective vehicles.

87. The defendants unconscionably sold defective class vehicles to the proposed class representatives and proposed class members without informing these purchasers that the class vehicles were defective. In the alternative, the defendants failed to notify the proposed class representatives and proposed class members after the time of sale that the engine had been modified and that the engine in their respective vehicles should be replaced prior to the expiration of the warranty.

88.    The defendants' conduct renders the vehicle purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

89.    The durational limitation of the express warranties accompanying the class vehicles is unreasonable and unconscionable since the defendants actively concealed the Piston Ringland Defect and issued incorrect maintenance recommendations and maintenance intervals.  The proposed class representatives and proposed class members had no notice of or ability to detect the defects.

90.    The defendants restricted the warranty provisions for class vehicles in an effort to avoid the cost of repairs because they were cognizant of the class vehicles' defects as described in this complaint that existed at the time of sale.

91.    Defendants were aware that engines in competitor vehicles manufactured and sold at the time the class vehicles were manufactured and sold, ordinarily last longer than warranted by the warranty accompanying class vehicles.

92.    The defendants engaged in unconscionable, fraudulent commercial practices and attempted to conceal class vehicles materials defects, workmanship defects, manufacturing defects and improperly recommended maintenance.

93.    The defendants are engaged in a continuing fraud concerning the true underlying cause of class vehicles' engine failures.

94.    The defendants failed to adequately test class vehicles in appropriate consumer environments prior to marketing, distribution and sale.

95.    The defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. The defendants' upper level management orchestrated this wrongful conduct.

96.    The proposed class representatives and proposed class members operated and maintained their class vehicles in conformity with the respective Owner's Manual and Warranty &

Maintenance Booklet and provided the requisite notice to the defendants' authorized agents for warranty repair after their class vehicles engines failed.

97.     Class vehicle owners sustained an ascertainable financial loss, including but not limited to increased maintenance costs for engine inspections and/or premature replacement of the engine. Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class vehicles' engines has become public information after the time of their purchase.

98.     The proposed class representatives and proposed class members have not received the benefit of their bargain concerning their respective purchase of class vehicles.

99.     The defendants are persons within the context of the consumer protection laws of New Jersey, New York, Arizona and Indiana together with other states and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to the proposed class representatives and proposed class members.

100.    The defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that class vehicles incorporated defective engines as described in this complaint and were accompanied by an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated incorrect engine service, maintenance and critical systems replacement recommendations.   The proposed class representatives and proposed class members were deceived by the defendants' conduct as described in this complaint with respect to their purchase of class vehicles.

101.    The defendants violated the consumer protection laws of New Jersey, New York, Arizona and Indiana and other states with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to the proposed class representatives and proposed class members.

102.    The defendants were under a duty to disclose safety defects in class vehicles as described in this complaint but failed to disclose to the proposed class representatives and proposed class members the characteristics of class vehicles with respect to the Piston Ringland Defect in violation of the consumer protection laws of New Jersey, New York, Arizona and Indiana and other states.  The defendants' omissions (that engines were defective and that the Piston Ringland Defect constituted a safety risk) deceived purchasers (including but not limited to the proposed class representatives and proposed class members).  Those disclosure omissions include the fact that class vehicles engine Piston Ringland Defect had a significant impact on operating costs and vehicle safety. This failure to disclose additional information concerning class vehicles defects as described in this complaint, had the capacity to, and in fact did, deceive purchasers (including but not limited to the proposed class representatives and proposed class members) in a material respect.

103.    If the proposed class representatives and proposed class members had been made aware of the Piston Ringland Defect as described in this complaint in their respective class vehicles and the attendant ramifications of value, durability, operating, and safety, they would not have purchased the class vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of class vehicles.

104.    The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representatives and proposed class members the Piston Ringland Defect in class vehicles even though the defendants knew or should have known information concerning the Piston Ringland Defect was material and central to the marketing and sale of class vehicles to prospective purchasers, including the proposed class representatives and proposed class members.

105.    The defendants violated the consumer protection laws of New Jersey, New York, Arizona and Indiana and other states by failing to inform class vehicles owners at the time of purchase that class vehicles had known defects, that the vehicles would prematurely require expensive engine

31

replacement and/or that the class engine could experience unanticipated failure with attendant safety consequences.

106.    As a direct result of these omissions, the proposed class representatives and proposed class members purchased class vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented.   These misrepresentations diminish the vehicle value and increase cost of vehicle ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase.

107.    The wrongful conduct of the defendants in violation of the consumer protection laws of New Jersey, New York, Arizona and Indiana and other states occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the defendants' conduct.

**What the Omissions Were:**

108.    The defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning class vehicles, including information concerning class engine Piston Ringland Defect, in an effort to deceive purchasers as described in this complaint.   At the time of purchase, the defendants fraudulently omitted to disclose material matter regarding the defects in class vehicles as described in this complaint, including their impact on future repairs, operating costs and vehicle reliability as described in this complaint.

109.    The defendants fraudulently concealed, from the proposed representatives and proposed class members, the defects in class vehicles even though the defendants knew or should have known that information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers, including the proposed class representatives and proposed class members.

110.    The defendants concealed from the proposed class representatives and proposed class members during their respective warranty periods that a defect existed in the class engine as described in this complaint that could have and should have been fixed during the warranty period.   This is

particularly true since these defects constituted a safety issue, and defendants' withholding of this material information deprived the proposed class representatives and proposed class members of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose:**

111.    The proposed class representatives and proposed class members are entitled to the reasonable inference that the defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions.

**The Context of the Omissions and the Manner in which they Misled:**

112.    Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class representatives and proposed class members) premised on affirmations and representations as described in this complaint.

113.    If the proposed class representatives and proposed class members had been informed of the Piston Ringland Defect in their class vehicles, they would not have purchased or leased their respective class vehicles or would have paid substantially less.  If the proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the class vehicles since each class member believed they were purchasing or leasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles.  If the proposed class representatives and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty. The defendants' conduct that violated the consumer fraud statutes alleged herein deprived the proposed class representatives and proposed class members of that remedy.

**What the Defendants Obtained through the Fraud:**

114.    Material information concerning class vehicles was concealed and/or actively

33

suppressed in order to protect the defendants' corporate profits from loss of sales, vehicle purchase refunds and warranty repairs. This conduct also sought to prevent adverse publicity and limit brand disparagement. Purchasers believed they were obtaining vehicles having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their class vehicles. The defendants had a uniform policy of not properly disclosing class vehicles defects in order to promote sales and increase profits as described in this complaint.

115.    As a proximate and direct result of the defendants' unfair and deceptive business trade practices, the proposed class representatives and proposed class members purchased class vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

## COUNT I

### BREACH OF UNIFORM COMMERCIAL CODE § 2-313: EXPRESS WARRANTY OF MERCHANTABILITY BY DEFENDANTS RESULTING IN FINANCIAL HARM

**(On Behalf of the Nationwide class or, Alternatively, the New Jersey, New York, Arizona and Indiana State Subclasses)**

116.    Proposed class representatives Amato, Moore and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

117.    Defendants are merchants with respect to passenger motor vehicles. Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by New Jersey, New York, Arizona and Indiana.

118.    Class vehicles were accompanied by a basic warranty of "3 years or 36,000 miles, whichever comes first." Class engines were covered by the Powertrain Limited Warranty that promised "any repairs needed to correct defects in "material or workmanship" for "5 years or 60,000 miles, whichever comes first" to the "engine block and all internal parts." SoA issued these class vehicle warranties.

34

119.    Defendants expressly warranted to the general public, owners and lessees of class vehicles that class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used.  The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

120.    Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of these vehicles including superior design and manufacture, safety, durability, reliability, economy and performance.  But, in fact, class vehicles engines contained defects in the engine that severely increased the cost of ownership and maintenance of class vehicles that was not contemplated by class vehicles owners at the time of purchase because defendants did not disclose the engine defects.

121.    Defendants represented that class vehicles were of a particular standard or quality, as described in this complaint, when they in fact were not.  Class engines in class vehicles are failing far short of the expected useful life.

122.    Defendants received adequate notice of its breach of the express warranties and failed to cure the warranty breaches.  The proposed class representatives and class members reported to defendants the problems with and failings of the engine class engines in their vehicles and requested that defendants cure the warranty breach by repair and/or replacement of the defective engine.  In the alternative, the proposed class representatives, as indirect purchasers, were not required to issue notice of the warranty breach to defendants and the lack of notice of warranty breach did not result in any prejudice to defendants.

123.    The proposed class representatives and proposed class members complied with maintenance recommendations for their respective class vehicles.

124.    Defendants failed to repair or replace the proposed class representatives' and proposed class members' class engines that were defective in materials and workmanship during the express warranty period although these defects were known to defendants at that time.[17]

125.    Class vehicles owned by the proposed class representatives and proposed class members also prematurely failed and/or experienced substantial performance diminution within their respective express warranty periods.

126.    The proposed class representatives and proposed class members relied on the express warranties made by the defendants concerning class vehicles when selecting to purchase their class vehicles.  As a result, the proposed class representatives and proposed class members sustained injury, damages and an ascertainable loss in the purchase price of their vehicles and other financial injury including the cost for premature class engine repairs that resulted from defendants' warranty breach.

127.    Class vehicles are not reliable because of the engine defect and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation.

128.    The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of their class vehicles engine's defective condition prior to failure.

129.    The express warranty remedy set out in the warranty provisions for class vehicles fails of its essential purpose under Uniform Commercial Code § 2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of defendants described in this complaint.

130.    Defendants breached the express warranties in that class vehicles were defective with respect to engine materials, workmanship, and manufacture.

---

[17] The Warranty & Maintenance Booklet materials for class vehicles recites that "warranty repairs ... will be performed by any Authorized SUBARU Dealer anywhere in the United States."

131.    Defendants further breached the express warranties in that class vehicles were accompanied by an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated no inspection and service intervals for the engine although defendants knew these components were defective and required periodic inspection, service and/or replacement.

132.    Defendants further breached the express warranties by failing to remedy the defective engine caused by defects in materials and workmanship as required by the warranty that accompanied the respective class vehicles.  Class vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, design and manufacture defects which cause the engine not to perform as warranted.

133.    The proposed class representatives and proposed class members relied on express warranties made by defendants concerning the class vehicles and sustained financial injury resulting from the breach of those warranties by defendants.

134.    Defendants' express warranty is a "repair and replace" warranty for future performance, as it promises to provide any repairs necessary to correct defects in materials or workmanship of the vehicle's internal parts at no charge to the owner or lessee.

135.    Under New Jersey, New York, Arizona and Indiana Commercial Code § 2-725, where a warranty extends to future performance, as the warranties here do, the claim accrues "when breach is or should have been discovered."

136.    Wherefore, the proposed class representatives Amato, Moore and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

## COUNT II

**BREACH OF UNIFORM COMMERCIAL CODE § 2-314: IMPLIED WARRANTY
OF MERCHANTABILITY BY THE DEFENDANTS**

**(On Behalf of the Nationwide Class or, Alternatively, the
New Jersey, New York, Arizona and Indiana Subclasses)**

137.   The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

138.   The defendants are merchants with respect to passenger motor vehicles.  Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by New Jersey, New York, Arizona and Indiana.

139.   The defendants failed to provide legally binding written notice to the proposed class representative and other class vehicle purchasers of implied warranty exclusions at time of purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of § 2-316 and therefore ineffective by law. The defendants impliedly warranted to the general public, owners and lessees of class vehicles that the class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used.  The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

140.   As manufacturers of consumer goods, the defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

141.   To the extent privity of contract is required for purposes of the application of implied warranty, the proposed class representative and proposed class members are third-party beneficiaries to a contract implemented by the defendants that creates an implied warranty of merchantability.

142.   The defendants breached their implied warranties in that class vehicles were defective with respect to engine design and manufacture as described in this complaint and were unfit for the ordinary purposes for which passenger vehicles are used because of those defects which caused premature piston failure and consequent damage to the engine.

143.   Class vehicles are predisposed to premature failure in normal anticipated operating environments because of engine materials, workmanship, design and manufacture defects described in this complaint that existed at the time these vehicles were manufactured.

144.   Class vehicles are not reliable and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden catastrophic engine failure. The defendants are estopped by their conduct, as described in this complaint, from disclaiming any and all implied warranties with respect to defective pistons in class engines. The proposed class representatives and proposed class members relied on implied warranties of merchantability made by the defendants regarding the class vehicles in choosing to purchase their respective class vehicles and sustained an ascertainable financial injury resulting from the breach of those warranties by the defendants.

145.   The defendants received adequate notice of their breach of the implied warranty of merchantability through the proposed class representative and proposed class members' requests for repair or replacement. In the alternative, class vehicle owners, as indirect purchasers, were not required to issue notice of the warranty breach to the defendants and any lack of notice of warranty breach did not result in any prejudice to the defendants. The defendants declined to offer the proposed class representative an effective remedy for their defective class engine or vehicle.

146.   Even though the proposed class representatives and proposed class members complied with class vehicle engine maintenance recommendations for their respective class vehicles, their respective class vehicle engines prematurely failed because of defects in the pistons.

147.   The proposed class representatives and proposed class members reasonably relied upon the expertise, skill, judgment and knowledge of the defendants and upon their implied warranty that class vehicles were of merchantable quality and fit for their intended use.  Class vehicles did not conform to the defendants' implied representations or warranties because of the Piston Ringland Defect were less reliable and more expensive to maintain than previous Subaru vehicles or competitor vehicles.

148.   The proposed class representatives and proposed class members had an independent legitimate consumer expectation that the class vehicles would last well in excess of 10 years and 120,000 miles before requiring any major engine repairs based on industry standards, the defendants' publications and other publications, competitor products, consumer product magazines, prior vehicle ownership and reputation of the defendants for manufacturing durable quality vehicles. There were no statements made by the defendants or their agents that contradicted or led consumers to lower their legitimate expectations at the time of purchase.

149.   The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of the class vehicles because the class engine defects were inside of the engine. The defendants' breach of their implied warranties of merchantability was the direct and proximate cause of the proposed class representatives' and proposed class members' financial harm. Had the class vehicles not contained defective and failing pistons ringlands, the proposed class representative and proposed class members would not have incurred the costs of engine repair.

150.   Wherefore, the proposed class representatives and proposed class members demand judgment against defendants including multiple damages, interest, costs and attorneys' fees.

<u>COUNT III</u>

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2310(d)(1(A)

**(Brought Under State Law on Behalf of the Nationwide Class or, Alternatively, the New Jersey, New York, Arizona and Indiana State Subclasses)**

151.    Proposed class representatives Amato, Moore, Lall and Sandoval and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

152.    This count is brought as a state law claim under 15 U.S.C. §2310(d)(1)(A) and is before this Court as a supplemental state court claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA.

153.    The proposed class representatives and proposed class members are consumers within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

154.    Class vehicles are consumer products within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

155.    Defendants are suppliers and/or warrantors within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

156.    Defendants' express warranties are written warranties within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  Class vehicles implied warranties created by operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by § 2308.

157.    Defendants breached the express and implied warranties accompanying class vehicles as described in this complaint.

158.    The Magnuson-Moss Warranty Act provides a claim for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

159.    Defendants' breach of the express and implied warranties was the direct and proximate cause of the proposed class representatives' and proposed class members' financial harm as more fully

set out in the preceding warranty counts and constitutes a violation of the Magnuson-Moss Warranty Act.

160.    Defendants are warrantors of class vehicles.

161.    Affording defendants a reasonable opportunity to cure their breach of written warranties for class vehicles defects would be unnecessary and futile.  The proposed class representatives and proposed class members have already attempted to secure warranty coverage for their engine replacement and related repairs without success.

162.    At the time of sale or lease of each class vehicles, defendants knew, should have known and/or was reckless in not knowing of the misrepresentations and material omissions concerning the class vehicles' inability to perform as warranted but nonetheless failed to rectify the situation and/or disclose the defects as described in this complaint.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that class vehicles resort to an informal dispute resolution procedure and/or afford defendants a reasonable opportunity to cure the breach of warranties is excused and thereby deemed satisfied.

163.    The proposed class representatives and proposed class members would suffer economic hardship if they returned their class vehicles but did not receive the return of all payments made by them.

164.    Wherefore, the proposed class representatives and proposed class members demand judgment against defendants including multiple monetary damages, interest, costs and attorney's fees.

## COUNT IV

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
("NJCFA") N.J. STAT. ANN.  §§ 56:8-2 *ET SEQ.*[18]

### (On Behalf of Plaintiff Amato and the New Jersey Subclass)

165.   Proposed class representative Amato incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

166.   Proposed class representative Amato asserts this count on behalf of himself and proposed New Jersey subclass members.

167.   The NJCFA § 56:8-2 prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . "

168.   Proposed class representative Amato and members of the New Jersey subclass are consumers/persons who purchased or leased class vehicles for personal, family, or household use.  The defendants are persons engaged in trade or commerce with respect to merchandise within the context of NJCFA.

169.   In violation of the NJCFA, defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing class vehicles that contain class engine defects described in this complaint and present an undisclosed safety risk to drivers and occupants of the class vehicles.  Further, defendants misrepresented the standard, quality or grade of the class vehicles that were sold or leased with the latent known defects and/or knowingly failed to

---

[18] Counsel for the plaintiffs will serve the New Jersey Attorney General with a copy of this complaint in accordance with N.J. STAT. ANN. § 56:8-20.

disclose the existence class engine defects described in this complaint and corresponding safety risk in violation of the NJCFA which were material to a reasonable consumer.  The defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to the proposed class representative Amato and proposed New Jersey subclass members the required maintenance and/or maintenance intervals of class vehicle engines.

170.   Defendants' misrepresentations and fraudulent omissions were material to plaintiff Amato and members of the New Jersey subclass.   When Amato and members of the New Jersey subclass purchased or leased their class vehicles, they reasonably relied on the expectation that the class vehicles' major engine assemblies specifically including the pistons would last beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk.  Had defendants disclosed that the engine pistons were prone to premature failure and/or created an unavoidable safety risk, Amato and members of the New Jersey subclass would not have purchased or leased the class vehicles, or would have paid less for their vehicles.   Further, had defendants disclosed that the class engine pistons would not last beyond the warranty periods without need for repair or replacement, Amato and members of the New Jersey subclass would have demanded repair or replacement during the warranty periods at no cost to Amato and members of the New Jersey subclass as provided for in defendants' warranties.

171.   Defendants knowingly concealed, suppressed and/or omitted to disclose the existence of the class engine Piston Ringlands Defect and corresponding safety risk in the class vehicles at the time of sale or lease and at all relevant times thereafter.  The defendants also fraudulently, intentionally, negligently and/or recklessly misrepresented to the proposed class representative Amato and proposed New Jersey subclass members the characteristics of class vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.   The defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles, including superior materials, workmanship, design, manufacture, safety,

durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

172.   Defendants knew that the class engine defects described in this complaint would cause the engines to fail before the useful life of the engine and unconscionably limited the manufacturer's warranty coverage so that the piston ringlands would fail beyond the warranty periods, thereby unlawfully transferring the costs of repair of these components to the proposed class representative Amato and members of the New Jersey subclass.  Further, defendants unconscionably marketed the class vehicles to uninformed consumers in order to maximize profits by selling class vehicles containing the undisclosed latent defect and corresponding safety risk.

173.   Defendants owed a duty to disclose the class engine defects described in this complaint and its corresponding safety risk to Amato and members of the New Jersey subclass because defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with class engine failure.  Rather than disclose the defects, defendants intentionally concealed the defect with the intent to mislead Amato and members of the New Jersey subclass in order to sell class vehicles and wrongfully transfer the cost of repair or replacement of the defective components or failed engine to Amato and members of the New Jersey subclass. The defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

174.   Defendants knew, or should have known, that the piston ringland defects in class vehicles would cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating.  Further, defendants knew, or should have known, that such loss of power would cause class vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.  The defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture

defects, as well as incorrect maintenance recommendations and maintenance intervals.  Although the defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, the defendants unconscionably denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.  In certain instances, the defendants secretly repaired some class engine to prevent dissemination of knowledge concerning class engine defects.

175.   Had Amato and members of the New Jersey subclass known about the class engine defects described in this complaint at the time of purchase, including the safety hazard posed by the defect and the monetary cost of repair, they would not have bought the class vehicles or would have paid much less for them.

176.   As a direct and proximate result of defendants' wrongful conduct in violation of the NJCFA, Amato and members of the New Jersey subclass have suffered and continue to suffer harm by the threat of sudden and unexpected failure of the engine pistons and/or actual damages in the amount of the cost to replace the defective pistons including other essential engine parts and/or the entire engine.  Plaintiff Amato and members of the New Jersey subclass have also suffered the ascertainable loss of the diminished value of their vehicles.  In the case of the proposed class representative Amato, he will be incurring financial damages of more than $7,000.00 (exclusive of vehicle rental) to replace the failed engine in his class vehicle.  The engine failure was directly and proximately caused by the defendants' violation of the NJCFA.

177.   As a further result of defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, the proposed class representative Amato and members of the New Jersey subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial as allowed by N.J. STAT. ANN. § 56:8-19.  Plaintiff Amato and members of the New Jersey subclass also seek an order enjoining defendants' unlawful, fraudulent

and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA § 56:8-19.

178.    Rather than conduct an open and fair inspection and repair procedure for all class engines, the defendants employed unfair and deceptive trade act practices to deny repairs or repair reimbursements in violation of the NJCFA.  One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which the defendants were not allegedly responsible.

179.    The defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which the proposed class representative Amato and proposed New Jersey subclass members were caused to suffer ascertainable damages by expending sums of money in purchasing and later repairing their class vehicles.  As reasonable consumers, the proposed class representative Amato and proposed New Jersey subclass members had no reasonable way to know that class vehicles contained pistons that were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of the defendants who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the engine.

180.    If the defendants had not concealed class engine defects from the proposed class representative Amato and proposed New Jersey subclass members within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

181.    The defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

182.    The defendants violated the NJCFA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials,

workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

183.    The defendants violated the NJCFA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the pistons.

184.    The defendants further violated the NJCFA by failing to inform prospective class vehicle purchasers that the defendants had not properly tested the engines including but not limited to the pistons.

185.    The defendants committed unfair and deceptive business trade act practices as described in this complaint.   The defendants repeatedly violated the NJCFA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Amato and proposed subclass members.

186.    The secret warranty programs for class engines initiated by the defendants and other wrongful conduct of the defendants in violation of NJCFA occurred within the limitations period set out in the statute and/or is tolled by the defendants' conduct.

187.    As a proximate and direct result of the defendants' unfair and deceptive business trade practices, the proposed class representative Amato and proposed New Jersey subclass members purchased class vehicles and sustained an ascertainable loss and financial harm.

188.    The proposed class representative Amato and proposed New Jersey subclass members experienced premature class engine failure, diminution of class vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

189.    The conduct of the defendants offends public policy as established by statutes and common law; is unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their

own) without any countervailing benefits to consumers and therefore constitutes an unconscionable commercial practice.

190.    Wherefore, the proposed class representative Amato and proposed New Jersey subclass members demand judgment against the defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate Court order prohibiting the defendants from further deceptive acts and practices described in this complaint.

## COUNT V

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT, IND. CODE §§ 24-5-0.5-1 *ET SEQ.*

#### (On behalf of Plaintiff Moore and the Indiana Subclass)

191.    Plaintiff Moore incorporates and realleges each preceding paragraph as though fully set forth herein.

192.    Plaintiff Moore asserts this count on behalf of himself and members of the Indiana subclass.

193.    Plaintiff Moore and members of the Indiana subclass are persons within the context of the Indiana Deceptive Consumer Sales Act (hereinafter "IDCSA"), Ind. Code §§ 24-5-0.5-1 *et seq*. and specifically § 24-5-0.5-2(a)(2).

194.    Plaintiff Moore and members of the Indiana subclass purchased and/or leased class vehicles for personal, family or household use.

195.    Defendants are persons within the context of the IDCSA, § 24-5-0.5-2(a)(2) and are engaged in consumer transactions in Indiana within the context of § 24-5-0.5-2(a)(1).

196.    Defendants are engaged in unfair, abusive and deceptive acts and practices within the context of Ind. Code §§ 24-5-0.5-3(b)(1), (2), (3), (5) and (8) as described in this complaint.

49

197.    Defendants committed deceptive and unconscionable acts in the course of consumer transactions within the context of IDCSA, § 24-5-0.5-10(b) as described in this complaint.

198.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Piston Ringland Defect with intent that plaintiff Moore and members of the Indiana subclass would rely upon their misrepresentations in connection with the sale and/or advertisement of class vehicles.

199.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to plaintiff Moore and members of the Indiana subclass the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the Piston Ringland Defect.

200.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to plaintiff Moore and members of the Indiana subclass the characteristics of class vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs. Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, engines in class vehicles contained a known defect as described in this complaint that caused the Piston Ringland Defect to prematurely fail.

201.    Defendants actively suppressed the fact that Piston Ringland Defects and engines in class vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

202.    Defendants secretly repaired some Piston Ringland Defects in class vehicles to prevent dissemination of knowledge concerning Piston Ringland Defect defects.

203.    Although Piston Ringland Defect knew defects in Piston Ringland Defects and misinformation in the owner's manuals were causing premature class engine failures, Piston Ringland

50

Defect denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

204.    One scheme included blaming Piston Ringland Defect failures on owners for poor or improper maintenance and other conditions for which Piston Ringland Defect were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Piston Ringland Defects, Piston Ringland Defect employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the IDCSA.

205.   Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which plaintiff Moore and members of the Indiana subclass were caused to expend sums of money in purchasing and later repairing their class vehicles.  As reasonable consumers, plaintiff Moore and members of the Indiana subclass had no reasonable way to know that class vehicles contained Piston Ringland Defects that were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Piston Ringland Defect who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the engine and Piston Ringland Defect durability.

206.    If Piston Ringland Defect had not concealed class engine defects from plaintiff Moore and members of the Indiana subclass within the express warranty period, Piston Ringland Defects would have been repaired without cost to purchasers as promised under the original warranty.

207.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

208.    Defendants violated the IDCSA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

51

209.   Defendants violated the IDCSA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class vehicles contained defects and would require regular replacement of expensive internal engine components such as the Piston Ringland Defect.

210.   Defendants further violated the IDCSA by failing to inform prospective class vehicle purchasers that Piston Ringland Defect had not properly tested the engines including but not limited to the Piston Ringland Defect.

211.   Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the IDCSA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class vehicles owned by Moore and members of the Indiana subclass.

212.   The secret warranty programs for class vehicles initiated by Piston Ringland Defect and other wrongful conduct of Piston Ringland Defect in violation of IDCSA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Piston Ringland Defect' conduct.

213.   As a proximate and direct result of Piston Ringland Defect' unfair and deceptive trade practices, plaintiff Moore and members of the Indiana subclass purchased or leased class vehicles and sustained an ascertainable loss and financial harm.

214.   Plaintiff Moore and members of the Indiana subclass experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

215.   The conduct of Piston Ringland Defect offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

216.    Plaintiff Moore and members of the Indiana subclass demand judgment against the defendants including restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting the defendants from further deceptive acts and practices described in this complaint.

## COUNT VI

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW
### § 349 DECEPTIVE ACTS AND PRACTICES

**(On behalf of New York Subclass)**

217.    Plaintiff Lall incorporates and realleges each preceding paragraph as though fully set forth herein.

218.    Proposed class representative Amato asserts this count on behalf of himself and proposed New Jersey subclass members.

219.    Defendants' practices, acts, policies and course of conduct, as described in this complaint, were intended to induce, and did induce, plaintiff Lall and the New York subclass members to purchase and/or lease class vehicles with the Piston Ringlands Defect.

220.    Defendants sold and/or leased the class vehicles knowingly concealing that these vehicles contained design, manufacturing and materials and/or workmanship defects.

221.    Defendants' practices, acts, policies and course of conduct are actionable in that:

    a)  Defendants actively and knowingly misrepresented to plaintiff Lall and the New York subclass members at the time of purchase or lease that class vehicle engines, including design, manufacturing, materials and/or workmanship of the engine pistons, did not have a material defect, were in good working order, not defective and merchantable;

53

b) Defendants failed to issue adequate warnings and notices concerning the use of and defects and problems associated with the Piston Ringlands Defect to consumers who purchased or leased class vehicles, despite the fact that defendants possessed prior knowledge of the inherent defects in class engine pistons;

c) Defendants failed to disclose to plaintiff Lall and the New York subclass members, either through warnings and/or recall notices, and/or actively concealed the fact from them that the class engine pistons were defective, despite the fact that defendants knew of such defects;

d) Defendants' actions and/or omissions caused plaintiff Lall and the New York subclass members to expend sums of money at its authorized dealerships and elsewhere to repair and/or replace class engine pistons, despite the fact defendants had prior knowledge of the defects at the time of placing class vehicles into the stream of commerce.  The post-sale denial of plaintiff Lall's warranty claim amounted to deceptive conduct under the New York Deceptive Acts and Practices statute and occurred within three years of initiating this action.

e) Defendants' marketing, advertising and promoting of their vehicles was deceptive because they concealed and failed to disclose known defects in class engines.

f) Defendants occasionally, through their agents and representatives, admitted to some class vehicles owners or lessees by words and action, that the defect should be covered by its warranties and denied this to others.  Defendants thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

222.   Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that defendants have, by the use of false or

54

deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the Piston Ringlands Defect.

223.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, defendants have misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

224.    Plaintiff Lall and members of the public were deceived by and relied upon defendants' affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the vehicle's safety, warranty benefits and attributes of class engine durability.

225.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, plaintiff Lall and the New York subclass members have been damaged as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

226.    As a further result, plaintiff Lall and the New York subclass members seek restitution of all monies  the defendants received as a result of selling class vehicles to plaintiff Lall and the New York subclass members with inherent defects at the time of purchase and/or lease, and by forcing plaintiff Lall and the New York subclass members to expend substantial sums of money for the repair and/or replacement of class engine defective pistons and/or component parts, despite the fact that defendants had prior knowledge of class vehicle engine defects.  Plaintiff Lall is informed and believes that the amount of restitution owing is unknown at this time, but will seek relief to amend this complaint at the time of trial, when the amount has been ascertained.  In addition, Lall and the New York subclass seek to recover the diminished value of their class vehicles, based on the difference between what Lall and class members paid for their class vehicles and what Lall and class members would have paid, had they been informed of the engine defect.

227.    Plaintiff Lall and New York subclass members request punitive damages and reasonable attorneys' fees.   Plaintiff Lall also requests a declaratory judgment that the defective engines in class vehicles of class members should be covered under warranty and must be repaired at defendants' expense.

## COUNT VII

### VIOLATION OF ARIZONA CONSUMER FRAUD ACT, A.R.S. §§ 44-1521 *et seq.*

### (On behalf of Plaintiff Sandoval and the Arizona Subclass)

228.    Plaintiff Sandoval incorporates and realleges each preceding paragraph as though fully set forth herein.

229.    Plaintiff Sandoval asserts this count on behalf of himself and members of the Arizona subclass.

230.    Defendants are "person[s]" as defined by A.R.S. § 44-1521(6).

231.    Defendants advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

232.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

233.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers including proposed Arizona subclass members.

234.    Defendants intended to mislead Sandoval and Arizona subclass members and induce them  to rely on their misrepresentations and omissions concerning class vehicles.

235.    The defendants were required to disclose to Sandoval and Arizona subclass members material facts, including but  not  limited  to the Piston Ringlands Defect.  Plaintiff Sandoval and the

Arizona subclass members acted reasonably in relying on the defendants' misrepresentations and omissions, the truth of which they could not have discovered.

236.    Defendants acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Sandoval and Arizona subclass members' rights.  The defendants knew at the time of their omissions and misrepresentations that class vehicle were not as represented and advertised.

237.    As a direct and proximate result of the defendants' deceptive acts and practices, Sandoval and Arizona subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including not receiving the full benefit of their bargain in purchasing class vehicles, and increased time and expense in dealing with class vehicle performance  and safety issues.

238.    Plaintiff Sandoval and Arizona subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages, disgorgement, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT VIII

## NEGLIGENT MISREPRESENTATION

### (On Behalf of the Nationwide Class or, Alternatively, the New Jersey, New York, Arizona and Indiana Subclasses)

239.    The proposed class representatives and proposed class members hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

240.    The defendants negligently and recklessly misrepresented to the proposed class representatives and proposed class members the characteristics of class vehicles with respect to engine materials, workmanship, design and manufacture, including that the class engine had a sufficient and adequate engine pistons.  The defendants negligently and recklessly misrepresented information in the class vehicles' owner's manuals that incorporated incorrect maintenance and service recommendations.

241.     The proposed class representative and proposed class members reasonably and justifiably relied upon representations made by the defendants including information in the class vehicles' owner's manual that incorporated incorrect engine inspection and service intervals.

242.     As a proximate and direct result of the proposed class representatives and proposed class members' reliance on the defendants' negligent and reckless misrepresentations, the proposed class representative and proposed class members sustained monetary damages as described in this complaint.

243.     Wherefore, the proposed class representatives and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

**COUNT IX**

**INJUNCTIVE AND DECLARATORY RELIEF**

244.     The proposed class representatives and proposed class members hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

245.     There is a justiciable dispute as to whether the engine incorporated in class engines should be covered under the warranty accompanying class vehicles.

246.     The proposed class representatives and proposed class members request a declaratory judgment declaring that going forward all remedial work necessary to correct the defective engine incorporated in class engines together with all resulting damages are covered under the class vehicles' warranty.

247.     This remedy is requested for all class members who still possess their vehicles.  This remedy is authorized under the consumer fraud statutes of New Jersey, New York, Arizona and Indiana that grant each respective proposed class representative and proposed class member the right to seek injunctive or declaratory relief for violations of their respective state's consumer fraud statutes.

**RELIEF DEMANDED**

WHEREFORE, proposed class representatives Amato and Moore and proposed class members request:

A.      An Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclasses as defined in ¶ 21 with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

B.      An Order appointing the proposed class representatives Amato and Moore as representatives of the proposed class and designating the law firms of Thomas P. Sobran P.C. and Kantrowitz, Goldhamer & Graifman, P.C. as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

C.      Judgment for the proposed class representatives and proposed class members against the defendants on all issues and counts;

D.      Damages for the proposed class representatives and proposed class members, including but not limited to damages, together with interest, prejudgment interest, costs and attorneys' fees;

E.      Restitution for all engine repairs incurred by the proposed class representatives and proposed class members resulting from the defectively designed and manufactured engines and incorrect maintenance and service intervals as set forth in the class vehicles' owner's manuals;

F.      Restitution of incidental expenses incurred by the proposed class representatives and proposed class members, including but not limited to rental vehicles and other substitute transportation;

G.      A Court issued declaratory judgment declaring that all class vehicles claims caused by their defective engines are within the scope of the class vehicles' warranty coverage; and,

H.      Any other relief deemed necessary by the Court.

## REQUEST FOR JURY TRIAL

The proposed class representatives and proposed class members request trial by jury on all issues and counts.

**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
*s/ Gary S. Graifman*

By:  Gary S. Graifman
Jay I. Brody
210 Summit Avenue
Montvale, New Jersey 07645
Tel:     (201) 391-7000
Fax:     (201) 307-1086
Email: ggraifman@kgglaw.com
          jbrody@kgglaw.com

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran
7 Evergreen Lane
Hingham, MA 02043
Tel:     (781) 741-6075
Fax:     (781) 741-6074
Email: tsobran@sobranlaw.com
(to be admitted *pro hoc vice*)

**Counsel for Plaintiffs**

Dated: November 9, 2018