UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMATO, ET AL | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 18-16118 |
| v. | : | OPINION |
| SUBARU OF AMERICA, INC., ET AL | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6). Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

## I.    Background

This case concerns alleged engine defects in Subaru's 2009 through and including 2018 model year Impreza WRX and WRX STi ("class vehicles" or "class vehicle"). Four named Plaintiffs, Joseph Amato, James Moore, Chris Lall, and George Sandoval (collectively "Plaintiffs"), bring this action against Defendants Subaru of America, Inc. ("SoA") and Subaru Corporation ("SRB"), (collectively "Subaru" or "Defendants"), individually and on behalf of all others similarly situated.

SRB is a Japanese corporation and manufacturer of Subaru vehicles. According to Plaintiffs, it manufactured and tested the class engine and engine management system, and "drafted and  published the Owner's Manual and Warranty & Maintenance Booklet materials that accompanied class vehicles and/or were published on the

1

Internet." Compl. ¶ 18. "SoA manufactures, imports, distributes and/or sells Subaru motor vehicles including all class vehicles and also acts as the authorized representatives of Subaru in the United States. SoA operates its national marketing, warranty, consumer relations and engineering offices from its New Jersey facility." Id. at ¶ 19. It also drafted and published the Owner's Manual and Warranty & Maintenance Booklet." Id. at ¶ 21. Plaintiffs now claim that the engines used in the class vehicles, including engine codes EJ255, EJ257, and FA20 ("class engines"), are "predisposed to premature engine failure." Id. at ¶ 1-3.

According to the facts alleged in Plaintiffs' Complaint: "Class vehicles are defective with respect to improperly designed and manufactured pistons and an engine management system and PCV (positive crankcase ventilation) system that subjects class engines to premature catastrophic engine piston ringlands failure (the 'Piston Ringlands Defect')" Id. at ¶ 4. This alleged defect "often" causes engine failure "at less than 50% of [the engines] reasonably expected useful life." Id. at ¶ 10. [1] Plaintiffs claim that the class engine failure causes power loss, stalling, and "sudden and catastrophic engine self-destruction as overheated internal parts seize." Id. at ¶ 8. Therefore, Plaintiffs assert that the Piston Ringlands Defect causes serious safety issues for drivers of the class vehicle. Id. at ¶ 9. Plaintiffs contend that the predecessor engines had similar issues, and instead of redesigning the engine, Defendants attempted to make certain modifications to the engine system.

---

[1] The Court addresses Plaintiff's allegations in more detail in its analysis of Plaintiffs' specific claims, including the causes of the Piston Ringlands Defect, as alleged in the Complaint. See infra Part III.d

Plaintiffs filed a class action Complaint with this Court against Defendants alleging class wide claims for Breach of Express Warranty of Merchantability (Count I), Breach of Implied Warranty of Merchantability (Count II), Violation of Magnuson-Moss Warranty Act 15 U.S.C. § 2310(D)(1)(A) (Count III), Negligent Misrepresentation (Count VIII), and Injunctive and Declaratory Relief (Count IX); and state law claims for certain subclasses under the New Jersey Consumer Fraud Act N.J. Stat. Ann. §§ 56:8-2 (Count IV), the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 (Count V), New York General Business Law § 349 Deceptive Acts and Practices (Count VI), and Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 (Count VII).

Plaintiffs claim that Defendants' had actual knowledge of the alleged defect, which they concealed from consumers. Specifically, that "defendants fraudulently, intentionally, negligently and/or recklessly concealed . . . the Piston Ringland Defect in class engines even though the defendants knew or should have known of design, materials and manufacturing defects in class vehicles." Id. at ¶ 47. They claim that "prior to manufacturing and then distributing a new part, defendants perform substantial field inspections, testing and quality review of vehicles in service to determine the root cause and diagnosis of a problem." Id. at ¶ 38. In addition, Plaintiffs claim Defendants would have obtained knowledge of defect through (1) field information and customer feedback on warranty claims that SoA monitors, (2) inspections of class engines during replacement pursuant to warranty claims, (3) sales and distribution of engines to dealerships and repair facilities, (4) internet communications and other consumer forums, (5) information concerning revisions made to subsequent engine specifications and materials, and (6) communications with class vehicle owners. Id. at ¶¶ 39-40.

The class vehicles were subject to a warranty contained within the Owner's Manual and Warranty & Maintenance Booklet materials. According to the Complaint, these materials "do not contain any maintenance or service information for class engine pistons or piston ringlands that are defective." Id. at ¶¶ 10, 53. Plaintiffs' claims that they timely notified the defendants of breach of warranties Id. at ¶ 55. The putative class contacted SoA directly and/or through an authorized dealership and were notified that SoA would not replace engines incorporated in class engines or reimburse replacement costs "because their vehicles were outside of the express warranty period." Id. at ¶¶ 56-57. Now Plaintiffs' plead that Defendants failed to cure the class vehicle defect, despite alleged knowledge of the defect, and have breached the terms of its express warranty. Id. at ¶ 58.

The named class representative Plaintiffs' claims arise out of the following alleged facts:

Plaintiff Amato was a resident of New Jersey at the time he leased his "new 2016 Impreza WRX STi from an authorized Pennsylvania Subaru dealer in November 2015." At 65,000 miles, Amato's class vehicle required replacement of the engine due to the Piston Ringland Defect. Amato spent more than $6,500 replacing the class engine together with other incidental expenses. Id. at ¶ 14.

Plaintiff Moore currently resides in Indiana. He "purchased a certified pre-owned 2013 WRX from an authorized Subaru dealer in Indiana in November of 2015." At 66,000 miles, Moore's class vehicle required replacement of the engine. Moore spent more than $7,500.00 repairing the class engine together with other incidental expenses. Id. at ¶ 15.

Plaintiff Lall currently resides in New York. He "purchased a new 2016 Subaru WRX from Curry Subaru, an authorized Subaru dealer in New York in or about May of 2016." Id. at ¶ 16. At approximately 32,000 miles, Bay Ridge Subaru worked on the clutch of his vehicle "and returned the vehicle to Lall without indicating any issue with the engine piston ringlands." Id. "Upon information and belief," Bay ridge Subaru completed "a tear down and diagnostic of the vehicle" but did not address or advise about the Piston Ringland's Defect. At approximately 33,000 miles, within 1,000 miles of receiving the vehicle back from Bay Ridge Subaru, "the vehicle suffered a catastrophic engine ringlands failure." Id. Thereafter, Lall "demanded" that SoA repair his vehicle's engine under warranty. According to the Complaint, SoA refused. Lall was required to pay for his engine repair and lost use of his vehicle in excess of 2 months. Id.

Plaintiff Sandoval is a resident of Arizona. He "purchased a new 2018 WRX STi from Auto Nation Subaru of Scottsdale, Arizona, an authorized Subaru dealer in Scottsdale, Arizona in 2018 for approximately $41,000." Id. at ¶ 17. The engine in Sandoval's class vehicle "has not experienced ringlands failure." Sandoval claims "he has suffered diminution of value as a result of class engine ringlands failure becoming public knowledge." Id. He claims that prospective purchaser(s) have told him "that because Subaru has publicized the fact that the pistons and piston ringlands required strengthening, an issue which Subaru revealed was fixed in the 2019 version of the WRX STi vehicle, that such purchaser(s) would not want to purchase the earlier class vehicles which did not incorporate engines with the strengthened pistons and ringlands." Id.

Presently, Defendants move to dismiss all claims alleged in Plaintiffs' Complaint. [Dkt. No. 10]. The Motion to Dismiss has been fully briefed and is ripe for decision.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607,

6

609 (D.N.J. 2006) (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)); <u>see also</u> <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). <u>Accord</u> <u>Iqbal</u>, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth). Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted). <u>See also</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679.

### III. Discussion

At the outset, Defendants object to the application of New Jersey law to nonresident Plaintiffs' claims for breach of warranties and negligent misrepresentation. In response, Plaintiffs contend that any conflict of laws analysis at the motion to dismiss stage would be premature. But "courts in this Circuit have sometimes determined that the choice of law analysis in a putative class action can be done at the motion to dismiss stage." <u>Snyder v. Farnam Companies, Inc.</u>, 792 F. Supp. 2d 712, 718 (D.N.J. 2011)

(collecting cases). If the Court were to conduct a choice of law analysis, it must apply the choice of law rules of the forum state, here, New Jersey. <u>Barbey v. Unisys Corp.</u>, 256 Fed. Appx. 532, 533 (3rd Cir. 2007). Under New Jersey rules, the "choice of law analysis must be undertaken on an issue-by-issue basis." <u>Harper v. LG Elecs. USA, Inc.</u>, 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (citing <u>Rowev . Hoffman-La Roche, Inc.</u>, 917 A.2d 767, 771 (N.J.2007)). Therefore, the Court will analyze each claim separately to determine whether an analysis is proper, and if so, determine which state's law should be applied at that time.

### A. Count I: Breach of Express Warranty

Plaintiffs' claims for breach of express warranty are premised on the warranties Defendant SoA issued to the class vehicles, including the basic warranty and Powertrain Limited Warranty ("the Limited Warranty"). Compl. ¶ 118. The basic warranty covered class vehicles for "3 years or 36,000 miles, whichever comes first." The Limited Warranty promised "any repairs needed to correct defects in material or workmanship for 5 years or 60,000 miles, whichever comes first." <u>Id.</u> This Limited Warranty particularly covered the class vehicle's engine, and "engine block and all internal parts." <u>Id.</u>; <u>see</u> [Dkt No. 10-2].

The relevant limited warranty materials state:

THESE WARRANTIES ARE LIMTED IN DURATION TO THE TIME PERIOD OF THE WRITTEN WARANTIES. THESE WARRANTIES ARE IN LIEU OF ALL OTHER OBLIGATIONS, LIBILITIES, OR WARANTIES, WHETHER EXPRESS OR IMPLIED. ANY IMPLIED WARRNATIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE END AT THE SAME TIME COVERAGE ON THE PARTCULAR COMPONENT ENDS.

[Dkt No. 10-2]. As to Plaintiffs' claims under Count I of the Complaint, the Court need not address or engage in any choice of law analysis. Defendants allege that a

conflict of law exists because New Jersey does not require privity or reliance to establish an express warranty claim, while the requirements under New York, Indiana, and Arizona law, include privity. Defendants, however, do not argue that Plaintiffs claim for breach of express warranty fails for lack of privity or reliance alike. Second, for the reasons stated below, the Court finds that Plaintiffs' breach of express warranty claim fails prior to the need for an analysis under any specific state law. In fact, Defendants do not argue that a conflict of laws between states exists on the pertinent issue this Court will dismiss Count I pursuant to. Therefore, the potential conflict is inapposite to the Court's analysis of Plaintiffs' claim.

Defendants argue that Plaintiffs' breach of express warranty claims against SoA fail and therefore, Count I should be dismissed because (1) the Limited Warranty does not cover the alleged design defect and (2) none of the Plaintiffs have pleaded "legitimate breach of express warranty claims." Def. Brf. at 13-21. Defendants first argument that Count I should be dismissed against SoA claims that the Limited Warranty that Plaintiffs rely on does not cover the alleged defect, because according to Defendants, Plaintiffs are alleging a design defect. The Limited warranty at issue covers only defects in "material or workmanship." Defendant argues that "material or workmanship" pertains to manufacturing defects and does not subsume design defects. The Court agrees that the language of the Limited Warranty does not cover design defects.

The Third Circuit has held that the plain and ordinary meaning of the term "defect[s] in . . . materials or workmanship," unambiguously excludes "design defects." Coba v. Ford Motor Co., 932 F.3d 114, 121 (3d Cir. 2019) (citations omitted). Prior to the Third Circuits ruling, a number of courts within this district, and the relevant

jurisdictions, held the same. See Cali v. Chrysler Grp. LLC, No. 10 CIV. 7606, 2011 WL 383952, at *2 (S.D.N.Y. Jan. 18, 2011), aff'd, 426 F. App'x 38 (2d Cir. 2011) ("The terms 'material,' 'workmanship,' or 'factory preparation,' . . . refer to the mechanical process of implementing [a] design."); Nelson v. Nissan N. Am., Inc., No. CIV. 11-5712, 2014 WL 7331922, at *3 (D.N.J. Dec. 19, 2014) (choosing "to join the vast weight of authority [by] holding that a workmanship and materials warranty cannot encompass a design defect claim."); Pegg v. Nexus RVs LLC, No. 3:16-CV-783, 2019 WL 2772444, at *8 (N.D. Ind. July 2, 2019) (same); Troup v. Toyota Motor Corp., 545 F. App'x 668, 668–69 (9th Cir. 2013) (same).

The Court must then decide if the Piston Ringland Defect, as pled, is a design defect or one of material and workmanship. In Coba, the court explained the difference between those types of defects as follows:

[D]efects in "workmanship" and "materials" are flaws pertaining to the construction or manufacture of a product, while defects in "design" are shortcomings that arise in the plans for a product's creation. More specifically, a "materials" defect is a failing in the quality of the actual substances used to make a product; a "workmanship" defect is a deficiency in the execution of a product's assembly or construction; and a "design" defect is a flaw inherent in the product's intended operation and construction . . .

Coba, 932 F.3d at 121.

Here, Plaintiffs contend that they have sufficiently pled facts that the class vehicle defect, is covered under warranty as a materials and workmanship defect. The Complaint alleges that "[c]lass vehicles are defective with respect to improperly designed and manufactured pistons and an engine management system and PCV (positive crankcase ventilation) system." Compl. ¶ 4. Plaintiffs also argue that their Complaint supports a claim for a manufacturing defect by claiming "the class engine pistons should have been manufactured differently by using forged pistons." Pl. Opp. at

16; see Compl. ¶ 5. Further allegations contained in the Complaint claim that class engines were failing due to "materials, workmanship, manufacture, or design defect." Compl. ¶ 44.

Defendants argue that, in effect, Plaintiffs are "deliberately refusing" to identify the type of defect the Piston Ringland engine defect is, which Defendants insist is one of design. Def Brf. at 15. Defendants indicate that Plaintiffs' pleading discusses the modifications to the ECM programming and PCV system, both of which are issues of design and would constitute design defects. Additionally, Defendants stress that Plaintiffs criticize Defendants' material selections as causes for the engine defect, and such choices are design decisions. See Compl. ¶¶ 5-7.

At this stage, the Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Prior to discovery, some courts have decided that "the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and [when] sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." Alin v. Am. Honda Motor Co., No. CIV A 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010).  In this case, Plaintiffs Complaint concludes that the Piston Ringland Defect is one of design and manufacture. However, even taking Plaintiffs' allegations as true, their Complaint fails to sufficiently plead facts supporting a manufacturing defect or defect in "materials or workmanship."

Plaintiffs' specifically claim that the class engine's internal defect resulted from performance modifications. According to the Complaint, previous versions of the engine, "[t]he 2.0 liter and 2.5 liter high output class engine[,] share substantially

similar piston ringland construction but are manufactured differently. The earlier 2.0 liter STi engine had more durable <u>forged pistons</u> while class EJ and FA engines use more <u>brittle cast pistons</u>." Compl. ¶ 5 (emphasis added). Plaintiffs make clear that what caused the cast engine piston's alleged durability issue, was the <u>material used</u> in the casting. Therefore, as pled, the alleged defect in the class vehicles resulted from the type of material used to case the engine pistons, which utilized a less expensive manufacturing process. These issues present problems in design, consistent with Plaintiffs' allegation that the engines lacked internal modifications to meet their performance modifications. <u>Id.</u> at ¶ 6.; <u>see Coba</u>, 932 F.3d at 123 (finding that a fuel tank defect, as alleged by plaintiff, was a design defect, noting that the problem was defendant's "plan to use [certain] coatings . . . in constructing its fuel tanks"). There are no facts alleged to suggest that the Piston Ringlands were defective because the engine departed from its intended design. Instead, as Defendants point out, Plaintiffs criticize the materials and <u>type of process</u> chosen to manufacture the alleged defective parts of the class vehicle. Such criticism fails to allege a problem <u>in the process</u> of constructing the engine, rather it alleges a flaw in the overall intended construction (a design decision).[2] <u>See Id.</u> at 121.

---

[2] Plaintiffs' argue in their opposition brief that "it can reasonably be inferred that the piston casting process was flawed including temperature regulation and/or other manufacture anomalies resulting in overly porous or brittle pistons." Pl. Op. 16. Plaintiffs cite paragraphs 5 and 6 in their complaint as supporting such an inference. The Complaint, however, forgoes this inference. Those allegations in the complaint are analyzed above and state that certain "performance modifications in many applications nearly doubled the horsepower for WRX and WRX STi engines over the standard base 2.5 liter and 2.0 engines. Although the performance modifications created substantially increased power output, class engines did not include necessary internal modifications to prevent damage to the piston ringlands." Paragraph 6 adds that "piston ringland durability was caused by casting the class engine pistons from hypereutectic aluminum silicon (Al-Si) alloy" and Al-Si selection results in more brittle piston ringlands.

Finally, Plaintiffs' opposition does not address its allegations regarding an inadequate PCV or engine management system. In fact, Plaintiffs' Complaint does not provide any factual assertions as to why the engine management system contributed to the engine failures and alleges only that the defendants "experimented with different PCV system configurations." Therefore, at this time, the Court finds that Plaintiffs fail to state a claim for breach of express warranty, thus the Court will dismiss Count I.[3]

## B. COUNT II: Breach of Implied Warranty of Merchantability

Count II of Plaintiffs' Complaint alleges that Defendants breached the implied warranty of Merchantability under UCC § 2-314. First, Defendants argue that Plaintiffs' claim, with respect to Plaintiffs Amato and Moore, fails "because any implied warranty to which Plaintiffs were entitled was limited in duration to the same extent as the express written Limited Powertrain Warranty." Defendants argue that Amato and Moore's class vehicles performed as warranted during the Limited Warranty period, and thus are precluded from a claim for breach of implied warranty. Notwithstanding, Plaintiffs argue that they assert valid implied warranty claims for two reasons: (1) because the premature ringlands failure and degradation in their class vehicles commenced within the Limited Warranty period, and (3) the Limited Warranty's durational limits were unconscionable.

Here, the Limited Warranty issued by SoA in turn limits any implied warranties available to Plaintiffs. The warranty states:

---

[3] The Court is not ruling that the defect in question is in fact a design defect, rather, as pled, Plaintiffs have not sufficiently stated otherwise. Additionally, because the Court finds that Plaintiffs' Count I, breach of express warranty fails entirely on this basis, it need not address Defendants' argument that Plaintiff's breach of express warranty claim must be dismissed against Defendant SBR because SBR was not a party to the express written warranties.

THESE WARRANTIES ARE IN LIEU OF ALL OTHER OBLIGATIONS, LIBILITIES, OR WARANTIES, WHETHER EXPRESS OR IMPLIED. ANY IMPLIED WARRNATIES OF MERCHANTABILITY OR FITNESS FOR A PARTCULAR PURPOSE END AT THE SAME TIME COVERAGE ON THE PARTCULAR COMPONENT ENDS.

Therefore, the implied warranty of merchantability is expressly limited to the same duration as the express Limited Warranty that Plaintiffs' received, which expired after 5 years or 60,000 miles, whichever occurred first. The implied warranty of merchantability warrants that a consumer good is "fit for the ordinary purposes for which such goods are used." U.C.C. § 2–314(2)(c).[4] Under U.C.C. § 2–316 contracting parties are permitted to modify the implied warranty of merchantability; in relevant part, the UCC states: Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of writing must be conspicuous . . . U.C.C. § 2–316(2); see also Demorato v. Carver Boat Corps., No. CIV.A.06 240 JAP, 2007 WL 1456207, at *6 (D.N.J. May 16, 2007), aff'd sub nom., 304 F. App'x 100 (3d Cir. 2008). Here, there is no dispute as to whether the express warranty's limitation of implied warranties is proper, nor do the Plaintiffs' contest that Amato and Moore experienced engine failure after 60,000 miles—post warranty expiration.

Instead, Plaintiffs argue that "[a]lthough their respective vehicles' engine failures occurred outside the unilateral express warranty period," a claim for breach of warranty may survive because "the proposed class representatives' class vehicle exhibited unmistakable symptoms (known only by the defendants) of degradation and impending

---

[4] Each of the relevant states here have adopted the UCC and, particularly, the pertinent section on implied warranties. See AZ Rev Stat § 47-2A212; Ind. Code Ann. § 26-1-2-314; N.J.S.A. § 12A:2–314(2)(c); N.Y. U.C.C. Law § 2-A-212. No choice of law analysis is required for this first argument.

premature failure within the express warranty period." See Compl. ¶ 57; Pl. Op. at 18. Plaintiffs' cite no legal authority for their proposition. To be sure, Plaintiffs' do not plead what these symptoms were or that they brought any such symptoms to the attention of SoA for repair or otherwise. In that regard, Plaintiffs allege that the symptoms were "known only by defendants," which Plaintiffs could not recognize for lack of requisite expertise. Compl. ¶¶ 57, 59. Therefore, the crux of Plaintiffs position—that the premature failure began within the warranty period—rests on their contention that only Defendants could recognize and, in fact have knowledge, of the impending failure. In other words, Plaintiffs' reason that because the class vehicle contained a latent defect, they should be able to assert breach of warranty claims. That fact, alone, cannot revive Plaintiffs' claim for breach of implied warranty, when the breach occurred outside of the warranty period. As an initial matter, courts have found that "latent defects discovered after the term of the warranty are not actionable." Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 519 (D.N.J. 2008) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 616 (3d Cir. 1995)). However, "[w]here the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable." Skeen v. BMW of N. Am., LLC, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014).

Plaintiffs' second argument alleges just that. They contend that Defendant SoA's Limited Warranty is unconscionable, and therefore unenforceable. Accordingly, the Court will now address whether Plaintiffs bring a valid claim for breach of the implied warranty of merchantability provided that the warranty's durational limitation, established by the express warranty, is unconscionable.

15

Uniform Commercial Code Section 2-302 governs unconscionability and was adopted by the four states involved in this matter.[5] Under that Section the "basic test" for unconscionability is "whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." U.C.C. § 2–302.

Generally, Plaintiff is required to allege facts to state a plausible claim that the contract was both procedurally and substantively unconscionable . Skeen, 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014); Menchhofer v. Honeywell, Inc., No. IP99-1674, 2002 WL 24454, at *4 (S.D. Ind. Jan. 7, 2002); Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988); Sw. Pet Prod., Inc. v. Koch Indus., Inc., 107 F. Supp. 2d 1108, 1113 (D. Ariz. 2000). In analyzing procedural unconscionability, courts look to the circumstance surrounding the formation of the contract. In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig., No. 1:14-CV-3722, 2015 WL 4591236, at *20 (D.N.J. July 29, 2015). "Procedural unconscionability includes, among other things, various inadequacies like age, literacy, and lack of sophistication." Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc., 357 F. Supp. 2d 788, 801 (D.N.J. 2005) (citations omitted). "Substantive unconscionability describes an exchange of promises that is so one-sided as to "shock the conscience of the court." Id.; Skeen at 2014 WL 283628 at *13.

---

[5] See N.J.S.A. 12A:2-302; N.Y. U.C.C. Law § 2-302; IC 26-1-2-302; A.R.S. § 47-2302; see Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 518 (D.N.J. 2008) ("Because the relevant UCC section is the same in all three states, there is no 'conflict' under New Jersey's 'governmental interest' test. The Court may therefore proceed to consider the relevant UCC section without undertaking a detailed conflict-of-law analysis.").

First, Defendants argue that the duration of the Limited Warranty is not inherently unconscionable or unreasonable citing a number of cases upholding warranties of shorter duration than SoA's warranty in this case. <u>See</u> <u>Merkin v. Honda N. Am., Inc.,</u> No. 17CV03625PGSDEA, 2017 WL 5309623, at *4 (D.N.J. Nov. 13, 2017); <u>In re Caterpillar, Inc.,</u> 2015 WL 4591236, at *20 (noting that the warranty's terms, "limiting the covered defects to material and workmanship and setting a durational limit of two years, are not categorically unconscionable").[6] Conversely, Plaintiffs argue that courts in this district have permitted claims for unconscionability to survive a motion to dismiss based on similar warranties. <u>See</u> <u>Skeen</u>, at *1 (holding that the plaintiff sufficiently pled that an express warranty, limited to a duration of 48 months or 50,000 miles, whichever occurred first, was unconscionable); <u>see also</u> <u>In re VW timing Chain Litig</u>. at *11-12. There is no question that this district is divided, particularly with regard to whether a defendant's knowledge that a product was defective when sold will suffice to allow a claim that a warranty's durational limitations are unconscionable.

On the one end, this district has "held that a manufacturer's knowledge that a part may ultimately fail does not, alone, make a time/mileage limitation unconscionable." <u>Merkin v. Honda N. Am., Inc.,</u> No. 17CV03625PGSDEA, 2017 WL 5309623, at *5 (D.N.J. Nov. 13, 2017) (citing <u>Henderson v. Volvo Cars of N. Am. LLC</u>, No. 09-4146, 2010 WL 2925913 (D.N.J. July 21, 2010)). The court in <u>In re Caterpillar</u> described the "[t]wo lines of cases [that] have emerged" and explained that cases

---

[6] Defendants also cite: <u>Smith v. Ford Motor Co.</u>, 462 F. App'x 660, 663 (9th Cir. 2011) (finding three-year/36,000 mile warranty not unconscionable); <u>Garcia v. Chrysler Grp. LLC</u>, 127 F. Supp. 3d 212, 228 (S.D.N.Y. 2015) (rejecting conclusory allegations that three-year durational limit of warranty was unconscionable); <u>Popham</u>, 2016 U.S. Dist. LEXIS 127093, at *18 (N.D. Ind. Sep. 19, 2016) (finding the RV's one-year limited warranty was not unconscionable).

"rejecting conclusory allegations of unconscionability based on knowledge of a latent defect, represents the recent trend in this District and is consistent with the prevailing approach elsewhere." Id. at *21 (collecting cases). Conversely, the other line of cases hold that durational limitations in a warranty may be unconscionable "where the plaintiff has alleged that the manufacturer has knowingly manipulated the warranty terms to avoid coverage." Merkin, 2017 WL 5309623, at *5 (citing In re VW, 2017 WL 1902160, at *13; Skeen, 2014 WL 283628, at *14).

Here, Plaintiffs' argument stresses that the Limited Warranty was substantively unconscionable because it "unfairly" shifted costs of premature engine failure to class vehicle purchasers. According to the Complaint, "defendants acted to conceal the Piston Ringland Defect during the warranty period so that repair costs would be shifted . . . once the warranty expired and the class engine failed." Compl. ¶69.[7] Plaintiffs contend that "Subaru unfairly formulated the warranty terms," and that such terms are "oppressive, unreasonable, [and] unconscionable" especially given the "incorrect maintenance recommendations." Pl. Op. at 13.

The Complaint further alleges that the duration of the warranty was procedurally unconscionable because of:

the disparity in bargaining power of the parties, the purchasers' lack of knowledge that class vehicles contained the Piston Ringland Defect, the inability of class vehicle purchasers or lessees to bargain with the defendants to increase durational warranties . . . lack of meaningful alternatives, disparity in sophistication of the parties . . . [and] absence of effective warranty competition . . .

Compl. ¶ 80.

---

[7] See also ¶ 80 (claiming unfair terms in the warranty included "durational warranties that unfairly favored the defendants particularly where there were class vehicle defects known only to the defendants and the warranty unfairly shifted repair costs to consumers when class vehicles' engines prematurely fail.").

The Court finds that Plaintiffs' pleadings, alleging both substantive and procedural unconscionability, consist of conclusory allegations and are therefore, insufficient to state a claim for unconscionability.

In short, Plaintiffs in the present matter plead that SoA's Limited Warranty is substantively unconscionable because Defendants (1) knew about the Piston Ringland Defect prior sale of the class vehicle, (2) knew that the defect would arise after the warranty expiration, and (3) acted to conceal the Piston Ringland Defect. Plaintiffs' allegations for substantive unconscionability are analogous to the number of decisions from this district and those of the other interested states, which held allegations primarily based on defendant's prior knowledge of the defect in question are insufficient to plead substantive unconscionability and survive a motion to dismiss.[8] Like here,

_____

[8] Alban v. BMW of N. Am., No. CIV. 09-5398, 2011 WL 900114, at *8 (D.N.J. Mar. 15, 2011) (finding Plaintiff's allegations insufficient to state a claim for unconscionability where Plaintiff's complaint pled that at the time he purchased his vehicle, BMW "(1) knew of the defect in the sound insulation, (2) knew that the defect would not become apparent until after the 4 year/50,000 mile period had passed, and (3) as a result, concealed material information that prevented [him] from bargaining for a warranty that would cover the known defect." (internal quotations omitted)); Gotthelf v. Toyota Motor Sales, U.S.A., Inc., No. CIV.A. 11-4429, 2012 WL 1574301, at *20 (D.N.J. May 3, 2012), aff'd, 525 F. App'x 94 (3d Cir. 2013) (determining that the plaintiff's allegations were "almost identical" to those in Alban: "that Defendants knew of the defect, knew that the defect would not become apparent until after the warranty expired, and that they concealed material information that prevented Plaintiff from bargaining for a warranty that would cover the known defect," and holding that the plaintiff's "breach of express warranty claims as alleged cannot survive dismissal based on the facts stated regarding unconscionability"); In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig., No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *22 (D.N.J. July 29, 2015) ("[I]n the present action, the Court finds Plaintiffs' allegations of unconscionability insufficient to alter the terms of the Engine Warranty. First, Plaintiffs have not alleged that Caterpillar knew of a defect which would manifest for the first time beyond the warranty period. Plaintiffs allege instead that Caterpillar knew at the time of sale of an inherent defect in the emissions control system which was so pervasive that they could not have been surprised when purchasers experienced problems and initiated warranty claims immediately after the Engines hit the market."); Majdipour v. Jaguar Land Rover N. Am., LLC, No. 2:12-CV-07849, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013)("There is nothing substantively unconscionable about a 6 year/75,000 mile warranty per se. The allegations that Land Rover knew that the Defect might manifest after the express warranty term do not implicate the conscionability of that term." (citing Nelson, 894 F.Supp.2d at 565–66)); Chiarelli v. Nissan N. Am., Inc., No. 14-CV-4327, 2015 WL 5686507, at *7

Plaintiffs' complaint in both <u>Alban</u> and <u>Gotthelf</u>, alleged that their respective car manufacturer's warranty was unconscionable because of the manufacture had knowledge that the defect existed at the time of sale, knowledge that the defect would manifest outside of the warranty duration, and concealed certain information that would prevent plaintiff's from bargaining a better warranty. <u>Alban v. BMW of N. Am.</u>, No. CIV. 09-5398, 2011 WL 900114, at *8 (D.N.J. Mar. 15, 2011); <u>Gotthelf v. Toyota Motor Sales, U.S.A., Inc.</u>, No. CIV.A. 11-4429, 2012 WL 1574301, at *20 (D.N.J. May 3, 2012).  Those claims were insufficient to state a claim that the warranties were substantively unconscionable. Additionally, the Court finds <u>Nelson v. Nissan N. Am., Inc</u>, particularly persuasive. 894 F. Supp. 2d 558 (D.N.J. 2012). The <u>Nelson</u> court also addressed the issue presented here; there, defendants allegedly knew of a defect that caused premature failure of the transmission in the car at issue. The court held that the defendants 5 year/60,000 mile warranty was not substantively unconscionable when plaintiff alleged defendants knew that the problem "would frequently manifest just after the expiration of the warranty period, and that even when the [defect] manifested before the expiration of the warranty period, Nissan dealerships could deny the existence of the problem until the warranty period expired." <u>Id.</u> at  565.

The Court finds no reason to depart from the numerous decisions in this district that reason nearly identical allegations pleaded in this matter are insufficient to show unconscionability even at the motion to dismiss stage. Most recently, a Court in this district noted "[a]s a manufacturer, Defendant is within its right to create a limited

---

(E.D.N.Y. Sept. 25, 2015) (holding that plaintiff did not sufficiently plead a claim that defendant's warranty was unconscionable, citing to New Jersey District Court cases, finding <u>Alban</u> particularly persuasive).

remedy that minimizes its costs and obligations based on its prediction of the rate of failure of particular parts." Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 597 (D.N.J. 2016) (agreeing with the many cases discussed here in holding that plaintiffs failed to state a claim for substantive unconscionability despite pleading defendants knew of the defect at the time of sale and manipulated its warranty). This Court agrees.

The line of cases ruling in Plaintiffs favor—finding similar allegations sufficient to state a claim that a warranty's duration limitations were unconscionable—are distinguishable. Those courts recognized that generally, the allegation that defendants knew of the defect is not itself sufficient to survive a motion to dismiss. However, alleging such facts in conjunction with procedural unconscionability may suffice to plead a claim. See Henderson, 2010 WL 2925913, at *9, *9 n.6 (permitting plaintiff's unconscionability claim to proceed because in addition to alleging defendant's knowledge of latent defect, plaintiff asserted that "members of the Class had no meaningful choice in determining those time limitations" and "a gross disparity in bargaining power existed as between Samsung").

Although Plaintiffs have pled procedural unconscionability, the facts alleged in the Complaint are conclusory and insufficient to permit Plaintiffs' unconscionability claim to proceed. The Court recognizes that the Skeen court ruled it was not conclusory for plaintiff to allege that as a consumer purchasing a car, he had less bargaining power than the manufacturer and had "no meaningful choice in setting the terms of the warranty." Skeen, 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014) (agreeing with Henderson's analysis). However, the Third Circuit has stated:

> Although car purchasers—whether ordinary consumers or businesses—may be unable to negotiate the specific details of their automobile warranties, or may be able to select among only limited options, purchasers certainly do

not lack bargaining power. Purchasers have the freedom to chose[sic] a less expensive car with a limited warranty or a more expensive car with a longer-term warranty, and they often have the option of buying an extended warranty.

Werwinski v. Ford Motor Co., 286 F.3d 661, 673 (3d Cir. 2002); see also Smith v. Ford Motor Co., 462 F. App'x 660, 663–64 (9th Cir. 2011) ("[P]laintiff was presented with a meaningful choice, not just the option of purchasing a different vehicle from a different manufacturer, but also the option of purchasing a different warranty with an extended durational limit from Ford."). Here, Plaintiffs' allegations are almost identical to those alleged in Skeen, but also in the cases already aforementioned. Given the Third Circuit's analysis in Werwinski, and the fact that here, the Complaint lacks any supporting facts as to their choices and bargaining power, the Court finds Plaintiffs' allegations that Subaru's warranty is procedurally unconscionable are "bare" conclusory statements that fail to state a claim under the Iqbal/Twombly standard. See Alban, 2011 WL 900114, at *9 ("[Plaintiff's] bare-bones allegations that he "had no meaningful choice in determining" the time and mileage limitation, and that "a gross disparity in bargaining power existed between" him and BMW are "no more than conclusions [that] are not entitled to the assumption of truth." (citations omitted)); In re Caterpillar, 2015 WL 4591236, at *22 (finding the same allegations "offered in support of procedural unconscionability are entirely conclusory"). Therefore, Plaintiffs' have not stated a claim that the Limited Warranty is unconscionable. Accordingly, Plaintiffs Amato and Moore's claims for breach of implied warranty must be dismissed as they are untimely because each Plaintiff's engine allegedly failed outside of the applicable warranty period.

Having found that Plaintiffs fail to state a claim for unconscionability, the Court will address Defendants next argument, that Plaintiffs Sandoval and Lall's implied

warranty claims fail for lack of requisite privity. As an initial matter, Defendants assert that a conflict between New York, Indiana, and Arizona law and New Jersey law exists as to implied warranties because New York, Indiana, and Arizona require a plaintiff to show vertical privity whereas New Jersey has no such requirement. In that regard, Defendants assert that each Plaintiff's home state law should govern their implied breach of warranty claims, and therefore, to the extent those claims are alleged under New Jersey law, they should be dismissed. [9]

"While courts in this district have, in certain circumstances, found choice-of-law analyses premature at the motion-to-dismiss stage, they have done so where either (i) the defendant failed to explain why there was a conflict between the laws of different relevant jurisdictions, or (ii) key facts relevant to a choice-of-law analysis were not available." Kearney v. Bayerische Motoren Werke Aktiengesellschaft, No. CV1713544, 2018 WL 4144683, at *4 (D.N.J. Aug. 29, 2018). Here, Defendants explained and argued an existing conflict of law between states. Therefore, it is appropriate for the Court to begin an analysis, and if it finds that "no other facts are needed," then the Court may decide which jurisdiction's law should apply. Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 453 (D.N.J. 2012).

"New Jersey has a flexible governmental-interest approach to resolving choice of law questions that 'requires application of the law of the state with the greatest interest in resolving the particular issue. . . .'" Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006) (quoting Gantes v. Kason Corp., 679 A.2d 106, 109 (N.J. 1996)). The test requires

---

[9] Plaintiff Moore's claim will be dismissed because his class vehicle experienced engine failure outside of the Limited Warranty period as stated above. Accordingly, the Court will not address whether his claim fails for lack of privity, thus Indiana's warranty law need not be evaluated.

two steps. At the first step, the court must determine whether an actual conflict exists. Id. Each of the relevant jurisdictions in this case have adopted the UCC. Consequently, each states' uniform code on implied warranties mirror one another. There is, however, a difference in how each state analyzes implied warranty claims with respect to the issue of privity, which Plaintiff concedes. Under New York and Arizona law, a plaintiff must show privity of contract to state a claim for breach of implied warranty, while a plaintiff under New Jersey law need not. Cf. Spring Motors Distributors, Inc. v. Ford Motor Co., 489 A.2d 660, 663 (N.J. 1985) (holding that "the buyer need not establish privity with the remote supplier to maintain an action for breach of express or implied warranties"); Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp., 504 N.Y.S.2d 192, 193-94 (N.Y. App. Div. 1986) ("[N]o implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged."); Plagens v. Nat'l RV Holdings, 328 F. Supp. 2d 1068, 1073 (D. Ariz. 2004) ("Arizona courts have consistently held that absent privity of contract, a purchaser cannot maintain a claim for breach of implied warranty under the U.C.C. against a manufacturer."); Chaurasia v. Gen'l Motors Corp., 126 P.3d 165, 171 (Ariz. Ct. App. 2006) ("Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty."). Therefore, Defendants correctly assert that there is a conflict of law as to Plaintiffs' Count II.

Where the court finds an actual conflict of laws exists it proceeds to step two, at which point it "must determine which jurisdiction has the 'most significant relationship to the claim.'" Skeen, 2014 WL 283628, at *3 (quoting P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008)). Such an analysis "relies on factors outlined in the Restatement (Second) of Conflict of Laws and varies depending on the nature of the

claim." Id. Contract claims, like those present here, rely on Restatement Section 188. Id. That section states: "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." See Restatement (Second) of Conflict of laws § 188. The general principles in Restatement § 6, provide a relevant foundation in any conflict's analysis. The New Jersey Supreme Court has stated that, "[r]educed to their essence, the section 6 principles are: '(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of . . . law; (4) the interests of judicial administration; and (5) the competing interests of the states."' Camp Jaycee, 962 A.2d at 463 (quoting Erny v. Estate of Merola, 792 A.2d 1208, 1217 (N.J. 2002)).

Additionally, § 188 further calls for the following contacts to be considered in determining the law applicable where the parties to the contract have not chosen a governing law: (a) place of contracting; (b) place of negotiation of the contract; (c) place of performance; (d) location of the subject of the contract; and (e) domicile, residence, nationality, place of incorporation and place of business of the parties. With limited exception, the Restatement also provides that "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." Id. § 188. Considering the factors involved at this step, the court is satisfied that the Complaint alleges the facts required to conduct the choice of law analysis at this stage. In addition, Plaintiffs' do not provide what other relevant facts, if any, would arise with further development of this case and therefore, the Court finds that a choice of law analysis is appropriate.

In light of all the relevant choice of law factors, the Court finds that each of Plaintiffs' home states maintain most significant relationship to the claim. Here, all Plaintiffs, including Moore, Lall and Sandoval negotiated contracts in connection with the purchase of their class vehicle in their home state. The Complaint alleges that Plaintiff Lall purchased his class vehicle in New York, the state where he resides; and the work done on Lall's vehicle also took place in New York. Finally, Plaintiff Sandoval purchased his class vehicle in Arizona, the state where he resides. Accordingly, each Plaintiff negotiated their contracts in their respective states. Aside from Plaintiff Amato, the named Plaintiffs have almost no connection to New Jersey. In fact, each Plaintiff's home state was the (a) place of contracting; (b) place of negotiation of the contract; (c) place of performance; (d) location of the class vehicle; and (e) domicile, or residence of the parties. Moreover, the general choice of law principles set forth in § 6 supports a finding that New York and Arizona have most significant relationship to the breach of warranty claim brought by a citizen of its state.

According to the Third Circuit, "the interests of interstate comity [the first factor of § 6] favor applying the law of the individual claimant's own state. Applying New Jersey law to every potential out-of-state claimant would frustrate the policies of each claimant's state." Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 209 (3d Cir. 2013). Second, in a case such as this, where the only contacts between the out-of-state Plaintiffs and Subaru took place in their own states, the interest of the parties favors applying the law of that state. Id. at 210 ("applying South Carolina law: because the only contacts between the parties took place in South Carolina, it is reasonable to assume that they expected that South Carolina law would apply"). Finally, the interest if Plaintiffs' home states outweighs New Jersey's interest considering "[e]ach plaintiff's

home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws." Ford Motor Co. Ignition Switch Prod. Liab. Litig., In re, 174 F.R.D. 332, 348 (D.N.J. 1997) ("These interests arise by virtue of each state being the place in which plaintiffs reside, or the place in which plaintiffs bought and used their allegedly defective vehicles or the place where plaintiffs' alleged damages occurred.").

The Court finds that each Plaintiffs' respective state's law should apply to each of their implied warranty claims. Notwithstanding, the Court rejects Defendants' assertion that Count II should be dismissed because of such finding. Count II of the complaint specifically alleges breach of implied warranty of merchantability under uniform commercial code §2-314 "(on behalf of the nationwide class or, alternatively, the New Jersey, New York, Arizona and Indiana State Subclasses)." Pl. Compl. Count II (emphasis added). Because Plaintiffs' have pled Count II, in the alternative, as subclass claims the Court will analyze each claim applying the law of that Plaintiff's state.

First, the Court will analyze Plaintiff Lall's claim for breach of implied warranty. As discussed, "[u]nder New York law, absent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty." Westchester County v. General Motors Corp., 555 F. Supp. 290, 294 (S.D.N.Y. 1983); Hubbard v. General Motors Corp., 95–CV–4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996). But New York Law recognizes the following exceptions to that general privity requirement: (1) privity is not required where the product in question is a "thing of danger;" and (2) privity is satisfied where plaintiff is asserting the claim as a third-party beneficiary. Westchester County, 555 F. Supp. at 294. Plaintiffs' argue that both exceptions to the privity rule apply to Lall's claim, asserting that "[t]he

implied warranty relates to a motor vehicle ("a thing of danger") and Plaintiffs were the intended beneficiary of Subaru's warranties in transferring their vehicles to authorized Subaru dealerships for sale and benefit to purchasers." Pl. Op. at 19.

New York case law explains that the exception to the privity requirement for things of danger applies "at least where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." Goldberg v. Kollsman Instrument Corp., 191 N.E.2d 81, 83 (N.Y. 1963). The Court agrees with Plaintiffs, in that Plaintiff Lall was not required to plead privity because his claim, as pled, meets the "thing of danger" exception. Here, Plaintiffs have adequately pled that the class vehicle's alleged defect has warranted the vehicles unsafe. According to the Complaint: "The failures in the class engines due to the Piston Ringland Defect pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning and the loss of power-assisted steering and reduced braking caused by lack of engine vacuum if the engine stalls." Compl. ¶ 9. A motor vehicle is intended to be driven. One that experiences loss of power, reduced braking, and "unexpected" engine shutdown poses a likely danger to the driver of that vehicle, and others on the road. Id. ¶ 77 n.16; Hubbard, 1996 WL 274018, at *5 ("[A] vehicle equipped with a defective braking system is likely to be a source of danger when driven."). Accordingly, Plaintiffs' sufficiently allege that class vehicles, when driven, pose a likely danger to some or many people. Furthermore, Plaintiff Lall, as "the purchaser of an automobile is certainly a person whose use of the product is

contemplated by the manufacturer." Id. Therefore, he has stated a plausible claim against Defendants for breach of implied warranty under New York law.

Next, Plaintiff Sandoval's claim for implied breach of warranty should be analyzed under Arizona law. As previously mentioned, Arizona also requires privity before a plaintiff can bring a claim for breach of implied warranty.  Unlike New York, Arizona has not adopted the same exceptions to that requirement. See Reger v. Arizona RV Centers, LLC, No. 3:16-CV-778 JD, 2017 WL 3593822, at *2 (N.D. Ind. Aug. 21, 2017) ("In other words, Arizona law only provides for implied warranties by the seller in a given transaction, not by other parties that manufacture the goods being sold." (citations omitted)). Plaintiffs' do not contest the lack of privity between Plaintiff Sandoval and Defendants. Plaintiffs' also do not contest Defendants' second argument, that Plaintiff Sandoval's claim further fails because his class vehicle is, in fact, merchantable. See Pl. Op. (citing only New York law concerning the issue of privity and failing to address Defendants' argument that Plaintiff Sandoval's class vehicle is merchantable.) Therefore, the Court will grant Defendants' motion as to Plaintiff Sandoval's claim for breach of implied warranty and will dismiss that claim with prejudice.

Accordingly, as to Count II, the Court finds that three of the four named Plaintiffs have failed to state a claim for implied breach of warranty, and thus, the Court will grant Defendants' Motion to Dismiss COUNT II of Plaintiffs' Complaint as to Plaintiffs Amato, Moore, and Sandoval, but deny that motion as to Plaintiff Lall.

### C. COUNT III: Violation of Magnuson-Moss Warranty Act

Plaintiffs' bring a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §2310, for Defendants' breach of the express and implied warranties accompanying their class vehicles. Compl. ¶¶ 156-58. Defendants argue that "Plaintiffs cannot pursue a warranty claim under the MMWA without looking to the underlying state law governing such claims." Def. Brf. at 9.  The Court agrees; each Plaintiffs' home-state law governs their MMWA claims.

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C.A. § 2310. The Court has already ruled that no Plaintiff has stated a claim for breach of express warranty (Count I) and only Plaintiff Lall has stated a claim for breach of implied warranty (Count II). Given that claims brought under the MMWA rely on the underlying state law claims, Plaintiffs cannot sustain a MMWA claim against Defendants based on breach of express warranty. See Johansson v. Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 265 (D.N.J. 2011). Similarly, Plaintiffs Amato, Moore, and Sandoval cannot maintain a claim under the MMWA for breach of implied warranty, as their Complaint fails, under relevant state law, to state a claim for such. However, Plaintiff Lall states a plausible claim for breach of implied warranty under New York law, therefore, his MMWA claim will survive. See DeFillippo v. Whirlpool Corp., No. 118CV12523NLHAMD, 2019 WL 4127162, at *14 (D.N.J. Aug. 30, 2019) (finding that because plaintiffs pled viable state law claims for express and implied warranty claims, "their MMWA claims may proceed as well"). Count III, therefore, is dismissed as to all named Plaintiffs', excluding Plaintiff Lall.

### D. Plaintiffs' Consumer Fraud Claims

Defendants argue that all Plaintiffs' statutory fraud claims, brought under the relevant states' consumer fraud statutes, fail to state a claim because the pleadings lack the particularity required by Fed. R. Civ. Pro. 9(b).[10] Defendants contend that Plaintiffs' Complaint falls short of the heighted pleading standard because it contains generalized omissions and unidentified affirmative misrepresentations.

Rule 9(b) requires that plaintiff plead the details of the alleged "circumstances" of the fraud with specificity sufficient to "place defendants on notice of the precise misconduct with which they are charged." <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984). To that end, "[a]lthough the rule states that [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally, and does not require the plaintiff to plead every material detail of the fraud, the plaintiff must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Argabright v. Rheem Mfg. Co.</u>, 201 F. Supp. 3d 578, 590–91 (D.N.J. 2016) (quoting <u>In re Rockefeller Ctr. Props., Inc. Sec. Litig.</u>, 311 F.3d 198, 216 (3d Cir. 2002) (internal quotations and citations omitted)). At a minimum, a plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." <u>Lum v. Bank of Am. .</u>, 361 F.3d 217, 224 (3d Cir. 2004).

---

[10] Despite Defendants initial argument that each Plaintiffs' fraud claims are subject to Rule 9(b) pleading standard, New York Law does not require a heighted pleading standard for claims under § 349 of the New York General Business Law. Plaintiff Lall's claim under that statue will be addressed separately below. Arizona, Indiana, and New Jersey do require a heightened pleadings standard as suggested by the Defendants. <u>See</u> <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007); <u>Jones v. Bridgepoint Educ., Inc.</u>, 2017 U.S. Dist. LEXIS 86204, at *11 (N.D. Ind. June 5, 2017; <u>Curry v. Stillwater Ins. Co.</u>, 2015 U.S. Dist. LEXIS 179833, at *5 (D. Ariz. Feb. 6, 2015).

Under Arizona, Indiana, New Jersey, and New York Law, "[f]alse promises, misrepresentations, and concealment or omission of material facts all constitute deceptive practices." <u>Argabright</u>, 201 F. Supp. 3d at 605–06 (analyzing the NJCFA, NYGBL § 349, and A.R.S. § 44–1522(A)); <u>see also</u> Ind. Code Ann. § 24-5-0.5-3. Plaintiffs have pled that Defendants engaged in unlawful conduct through both misrepresentations and omissions. The Defendants allege plaintiffs have failed to establish either.

    a.  <u>Affirmative Misrepresentations</u>

With respect to affirmative misrepresentations, Plaintiffs' Complaint alleges that Defendants made misrepresentations in their Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles, which "incorporated incorrect  engine  service, maintenance and  critical systems replacement recommendations" Compl. ¶¶ 10, 100. It alleges that Plaintiffs' had "an independent and legitimate consumer expectation that the class vehicle would last well in excess of 10 years and 120,000 miles before requiring any major engine repairs based on industry standards, the defendants' publications, competitor products, consumer product magazines prior vehicle ownership and reputation of the defendants for manufacturing durable quality vehicles." <u>Id.</u> ¶ 148. Defendants argue that, still, the "Complaint pleads no actual statement, by any actual person, at any actual time."

According to the Complaint, however, "defendants (and particularly the sales and marketing executives at SoA) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 120,000 miles or ten years before experiencing engine failure." <u>Id.</u> ¶ 73. Plaintiffs' further allege that Defendants' Owner's

Manual and Warranty & Maintenance Booklet materials contain maintenance schedules that extend to 120,000 miles, but "no scheduled maintenance or replacement" recommendations for the class engine or its internal components at issue. Id. ¶ 10 n.8.

Second, Plaintiffs' plead that they were subjected to misrepresentations "prior to" and "at the time of sale" of their class vehicles, wherein Subaru vehicle dealers referenced publications including the Owner's Manual and Warranty & Maintenance Booklet materials, which "created a reasonable belief that the useful life expectancy of the engine in the class vehicles without a major failure was in excess of 120,000 miles" Compl. ¶ 61. Particularly, Plaintiffs' claim that "these representations specifically related that the class engine's piston maintenance consisted of following instructions for recommended engine oil and change interval." Id. Plaintiffs' further allege that despite these representations "class engines in class vehicles often fail at less than 50% of their reasonably expected useful life." Id. at ¶ 10.

The Court finds that Plaintiffs' sufficiently allege the general content of the misrepresentation, who made the misrepresentation, where it was made, and when Plaintiffs were exposed to that misrepresentation. The Court is therefore satisfied that Plaintiffs' Complaint "sufficiently place Defendant on notice regarding the specific misconduct that Plaintiffs' assert was fraudulent and deceptive in connection with the statutory fraud [claim]." In re Volkswagen Timing Chain, 2017 WL 1902160, at *23 (finding plaintiffs sufficiently pleaded statutory fraud claims, where plaintiffs alleged "how they were supposedly misled about the defective Timing Chain System, along with misrepresentations by Defendant regarding . . . the useful life of the vehicle and its engine components, as well as the necessary maintenance and repairs associated with the Class Vehicle.").

a)  <u>Omissions</u>

"Although allegations of fraud must meet the heightened pleading standards of Rule 9(b), plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim." <u>Feldman v. Mercedes-Benz USA</u>, LLC, No. 2:11-CV-00984, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) (citing <u>Falk v. Gen. Motors Corp.</u>, 496 F. Supp. 2d 1088, 1098–99 (N.D.Cal. 2007)). Defendants argue that Plaintiffs fail to plead any facts that sufficiently allege Defendants' fraudulently omitted to disclose material facts in connection with the existence of the class engine defects. Again, the Court disagrees.

First, Defendants argue that the Complaint fails to allege actual knowledge by anyone at Subaru. Plaintiffs' Complaint, however, sufficiently alleges Defendants presale knowledge of the alleged defect. As Plaintiffs' point out, the Complaint alleges the following facts: (1) complaints on record with the National Highway Traffic Safety Administration (NHTSA) demonstrate the engine defect, concerning ringland failure; (2) consumer complaints, which Defendants are required to monitor under TREAD Act; and (3) Defendants' redesign and/or manufacturing change to the class engines. Compl. ¶¶ 33, 48, 52. Defendants' contest that such allegations can show Defendants' knowledge of any defect. For example, Defendants' stress that the NHTSA complaints were not made to Subaru and refer to earlier models, not included in the definition of class vehicle in this case. The NHTSA complaints provided by Plaintiffs' date from 2009 to 2010 and concern model years 2008, 2009, and 2010.  To be sure, class vehicles, according to Plaintiffs, include Subaru's 2009 through and including 2018 model year Impreza WRX and WRX STi, leaving the 2008 model out. But class engines do include 2008 models. <u>Id.</u> at ¶ 3.

Moreover, the NHTSA complaints specifically state that the engine issues were reported to Subaru by way of warranty claims, replacement, and one complaint in 2009 stated that the problem was "dealer diagnosed as Ringland/piston failure." <u>See</u> Compl. at 14. The NHTSA complaints, in effect, show reason for Defendants to know of the defect years prior to Plaintiffs' purchases of the class vehicle and of an ongoing problem. To that extent, Plaintiffs further allege that Defendants' were monitoring NHTSA and re-designed the Class Engine components and management system. According to the complaint, those modifications were made in an effort to address the apparent problem with predecessor engines, "well known to Subaru." <u>Id.</u> ¶¶ 34-35. "Those attempted modifications demonstrate that there was a continuing problem with the EJ255 and 257 engines since their introduction in early 2000 and FA class engines introduced in 2015 that has yet to be fully resolved." <u>Id.</u>

Additionally, Plaintiffs' allege that in 2018 Defendants issued a press release and advertisement concerning the 2019 WRX STI, announcing that the model included a "retuned ECU and stronger pistons [that] contribute to the increased engine performance." <u>Id.</u> at ¶ 36. According to the Complaint, "[t]his admission confirms that the WRX and WRX STi class engines had existing insufficient strength pistons because a mere 1.6% increase in engine horse power wouldn't require higher strength pistons given dynamic factor of safety overload design considerations." <u>Id.</u> Finally, Plaintiffs allege <i>inter alia</i> detailed allegations explaining Defendants field inspections, testing, and quality review protocol. <u>Id.</u> at ¶ 38-39.[11] "Additional information supporting

---

[11] Defendants suggest that these are general allegations "about a car company's business operations" and fail to impute knowledge of the alleged defects on to Defendants. Def. Brf. at 34-35 (citing <u>Gotthelf v. Toyota Motor Sales</u>, U.S.A., 525 F. App'x 94, 104 (3d Cir. 2013)). This case is distinguishable from <u>Gotthelf</u>, in that Plaintiffs' Complaint further details how Subaru

allegations of fraud and fraudulent conduct is in the control of the defendants." Id. at ¶ 71. Together, the factual allegations contained in the Complaint support a reasonable inference that Subaru knew about the Piston Ringland Defect. Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) ("Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.").

Despite Defendants' next contention, that Plaintiffs have failed to establish "who at SoA or SBR supposedly knew about the alleged defect or when that knowledge supposedly came about," the Complaint states "knowledge is imputed to all defendants because SoA was monitoring warranty claims and class vehicles performance in the United States, and reporting back to its parent company located in Japan" and "the proposed class representatives and proposed class members are entitled to the reasonable inference that the defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions." Id. at ¶ 111. The Complaint also alleges that Defendants knew about the defect as early as 2008, stating that SoA issued "an immediate stop sale order on April 7, 2008 for 2008-2009 Subaru vehicles sold in the United States. The purpose of the stop sale was to allow Subaru and SoA to investigate 'Engine Knocking Noise' affecting the 2.5 liter engines after '[a]n internal investigation confirm[ed] an internal wear issue on the failed units.'" Compl.

---

monitors defects and the position of those responsible for certain protocol. In Gotthelf, the plaintiff provided "no factual support . . . he does not state when the alleged complaints were received, or to whom at Toyota these alleged complaints were sent. Nor does he provide any facts relating to the alleged books of knowledge, internal testing, or dealership repair orders. Id. at 104 (emphasis added).

n.3. Therefore, taking into consideration the totality of the factual allegations, Plaintiffs' have pled Defendants knew of the alleged engine defect prior to the sale of class vehicles to Plaintiffs.

Finally, Defendants argue plaintiffs fail to plead any fraudulent omissions. "A plaintiff who asserts a fraud claim based on omission must 'allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud.'" Henderson, 2010 WL 2925913, at *5 (D.N.J. July 21, 2010) (quoting In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig., 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), aff'd sub nom., Briehl v. Gen. Motors Corp., 172 F.3d 623 (8th Cir. 1999)). With regard to Defendants' particular omissions, Plaintiffs' allege that they "failed to inform class vehicle owners and lessees prior to purchase or lease or during the express warranty period that their engine was defective as a result of the Piston Ringlands Defect and would fail shortly after the warranty period expired." Compl. ¶ 49. Additionally, "[a]t the time of purchase, the defendants fraudulently omitted to disclose material matter regarding the defects in class vehicles as described in this complaint, including their impact on future repairs, operating costs and vehicle reliability." Id. at 108. Next, Plaintiffs' allege that that "the defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions," and that the information was concealed in order for Defendants to sell class vehicles. And if the proposed class knew of the alleged defect, they would not have purchased their vehicles or, if informed of the defect after purchase, could have had their class engines repaired during the warranty period. Id. at ¶¶ 112-113. Courts in this district have found similar allegations were sufficient to withstand a motion to dismiss. See, e.g., Dewey, 558 F.

Supp. 2d at 527 (finding the following allegations sufficient "Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems . . . .").

While the Complaint could be more detailed, for example, as to the responsibility of defendants in disclosing these omissions, this does not defeat their claim at this early stage. See Henderson, 2010 WL 2925913, at *5 (upholding the plaintiffs' statutory fraud claim despite finding "certain aspects of Plaintiffs' pleadings are sparse—e.g., what party should have disclosed the defect (Volvo or a dealer), how the disclosures should have been made, and to what types of consumer must the disclosures be made (new car purchasers or all purchasers)"). Having found that the Complaint meets Rule 9(b)'s pleading standard, the Court will now address Defendants' argument's pertaining to each individual named Plaintiffs' statutory consumer fraud claim.

1. *COUNT IV: New Jersey Consumer Fraud Act*

Plaintiff Amato brings a consumer fraud claim under the New Jersey Consumer Fraud Act. Defendants put forth a number of arguments calling for the dismissal of Plaintiff Amato's Claim. As an initial matter, Defendants point out that Plaintiff Amato has not provided his current place of residence in the Complaint before the Court. The Complaint states that Plaintiff Amato leased a 2016 Impreza WRX STi from an authorized Pennsylvania Subaru dealer while residing in New Jersey. ¶ 14.  Plaintiffs' also concede that "[t]here were no Complaint allegations as to what state law was applicable to the lease." Pl. Op. 28. Accordingly, Defendants' also argue that Amato's

claim must also be dismissed because he is not a part of the sub-class he purports to represent—persons who "purchased or leased their class vehicles in the State of New Jersey." ¶24. The Court finds that these gaps in the pleadings warrant the dismissal of Plaintiff Amato's claim under the NJCFA, as these facts are necessary to determine whether Amato may properly bring a claim under the statute and whether he may do so on behalf of the alleged class. The Court disagrees with Defendants contention, however, that Amato's claim should be dismissed with prejudice, therefore Count IV is dismissed without prejudice, with leave to amend.[12]

### 2. COUNT V: The Indiana Deceptive Consumer Sales Act

Plaintiff Moore brings his consumer fraud claim under the Indiana Deceptive Consumer Sales Act ("IDCA"). Defendants' argument that Plaintiff Moore's claim is time barred. Plaintiff Moore purchased a certified pre-owned 2013 WRX (his class vehicle) in 2015. Under the IDCSA: "Any action brought under this chapter may not be brought more than two (2) years after the occurrence of the deceptive act." Ind. Code Ann. § 24-

---

[12] Defendants' argument is based on their contention that Plaintiff Amato is precluded from bringing a NJCFA claim because the alleged defect manifested after the expiration of his express warranty. In making this argument, Defendants rely on Perkins v. Daimler Chrysler Corp.; the Court finds this case distinguishable. Perkins did not address circumstances "in which safety concerns might be implicated"—which is pleaded here, and thus, implicated in this case. Perkins, 890 A.2d 997 at 1004 ("Our determination is driven by the fact that, in this case, it was not alleged that the deterioration or failure of such a part represented a danger to others."). Here, Plaintiffs go further by alleging that their class engines failed, that Defendants knew of the defect, and that such defect would cause premature engine failure, and that Defendants concealed that information. See Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 501-02 (D.N.J. 2009) (distinguishing Perkins from the facts in its case, on the basis that plaintiffs in Perkins did not allege defendant's knowledge or concealment of the alleged defect, finding that Perkins "stands for the proposition that merely alleging that the warranty is shorter than the industry standard useful life of the product does not state a claim under the CFA"); see also In re Gen. Motors LLC Ignition Switch Litig., 339 F. Supp. 3d 262, 283–84 (S.D.N.Y. 2018).

5-0.5-5(b). Defendants argue that "his purchase occurred two years after any original representations about the vehicle were made, and more than two years have passed since any representations could have been made to him in connection with his purchase." Fraudulent concealment, however, will toll the two-year statute of limitations. Morgan v. Koch, 419 F.2d 993, 998 (7th Cir. 1969). Plaintiffs argue that their Complaint alleges further deceptive post-sale acts of Subaru that "reset the IDCSA limitations period when Moore inquired into his engine failure." Pl. Op. at 29.

"Indiana law narrowly defines concealment. . . . [it] must be active and intentional; passive silence is insufficient to trigger the fraudulent concealment doctrine, absent allegations that the defendant was in a continuing fiduciary relationship with the plaintiff." Tolen v. A.H. Robins Co., 570 F. Supp. 1146, 1151 (N.D. Ind. 1983) (citations omitted). Still, "[a]n exception to the affirmative acts requirement exists where there is a fiduciary or confidential relationship giving rise to a duty to disclose material information between the parties." Id. at 1152. Plaintiffs' Complaint includes allegations that Defendants owed a duty to disclose. See Compl ¶¶ 77 n.16, 102, 173. Defendants do not argue that Plaintiffs' have inadequately pled that there was a duty to disclose material facts. Absent such an argument, the Court will not dismiss Count V at this early stage.

3. *COUNT VII: Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 et seq.*

Plaintiff Sandoval asserts a statutory consumer fraud claim under the Arizona Consumer Fraud Act ("ACFA"). The ACFA's purpose "is to provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." Waste Mfg. & Leasing Corp. v. Hambicki, 900 P.2d 1220, 1224

(Ariz. Ct. App. 1995). Arizona courts have held that "[i]t is clear that before a private party may exert a claim under the [ACFA] he must have been damaged by the prohibited practice." <u>Peery v. Hansen</u>, 585 P.2d 574, 577 (Ariz. Ct. App. 1978); <u>Cheatham v. ADT Corp.</u>, 161 F. Supp. 3d 815, 831 (D. Ariz. 2016); <u>Nataros v. Fine Arts Gallery of Scottsdale, Inc.</u>, 612 P.2d 500, 504 (Ariz. Ct. App. 1980) ("[I]t is clear that the misled consumer must have suffered some damage as a result of the misrepresentation."). Under the ACFA, an individual's damages are "his actual damages suffered as a result of the unlawful act or practice." <u>Holeman v. Neils</u>, 803 F. Supp. 237, 242 (D. Ariz. 1992). Actual damages include out of pocket expenses which encompasses consideration paid on the contract and "all sums needed to restore a party to the position it occupied before the wrongful conduct." <u>Horowitch v. Diamond Aircraft Indus., Inc.</u>, No. 6:06-CV-1703, 2009 WL 3790415, at *5 (M.D. Fla. Nov. 9, 2009) (applying Arizona law).

Here, Defendants assert that Mr. Sandoval is precluded from bringing a claim under the ACFA because Mr. Sandoval's class vehicle "performed, and continues to perform, as expected" and therefore, he has no basis for relief. Plaintiffs' do not contest this, to the extent that Mr. Sandoval's class engine has not experienced ringlands failure. Instead, Plaintiffs' argue that Mr. Sandoval still maintains a plausible claim for relief because the diminution of value in his class vehicle, and the fact that all Plaintiffs' "would not have purchased their respective class vehicle or paid less if they had been made aware of the [defect]"—as alleged in the complaint—qualify as "appreciable loss" under Arizona law. Pl. Op. at 29; Compl. ¶¶ 17, 103.

In support, Plaintiff cites <u>Cheatham v. ADT Corp.</u>, in which the plaintiff alleged that she would not have purchased an allegedly defective product "but for" the defendant's conduct that allegedly violated the ACFA. 161 F.Supp.3d 815, 820–22, 831 (D. Ariz.

2016). The District Court for the District of Arizona held that plaintiff's allegations were "sufficient to establish the damages element" under the ACFA. Id. (citing Parks v. Macro-Dynamics, Inc., 121 Ariz. 517, 521, 591 P.2d 1005 (Ct. App. 1979)). In Cheatham, the Plaintiff had further alleged that she suffered loss, as she was bound to a contract with Defendant that required a penalty payment if Plaintiff were to cancel it.  Id.  The Court in In re Arizona Theranos, Inc., Litig., 256 F.Supp.3d 1009, 1028 (D. Ariz. 2017), upheld plaintiffs' ACFA claim where plaintiffs sole allegation pertaining to damages included that they "would not have purchased Theranos blood tests if they had known that defendants were using their blood samples for research and product development"). reconsideration granted in part on other grounds, No. 2:16-CV-2138, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017). The court in, In re Gen. Motors LLC Ignition Switch Litig., found that these two Arizona rulings supported the determination that plaintiffs ACFA claim pleaded damages despite the fact that plaintiffs allegations were based on an unmanifested defect that did not cause personal injury or property damage. 339 F. Supp. 3d 262, 285 (S.D.N.Y. 2018) (applying Arizona law). In this case, Plaintiff Sandoval, like the plaintiffs in Cheatham, In re Arizona Theranos, and In re Gen. Motors, has pled out-of-pocket expenses to the extent that "but for" Defendants' alleged fraudulent conduct, Plaintiff would not have purchased his car; and has actual damages resulting from the decrease in value of his class vehicle. See Parks, 591 P.2d at 1009 (damages under ACFA include "out-of-pocket expenses necessary to perform the contract prior to discovering the fraud"). Therefore, the Court finds sufficient pleading of damages to sustain a claim under the ACFA and will deny Defendants motion to dismiss Plaintiff Sandoval's claim under Count VII.

### 4. COUNT VI: New York General Business Law §349 Deceptive Acts and Practices

Plaintiff Lall brings a claim under § 349 of the New York General Business Law. Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. , "[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed.R.Civ.P." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005). Defendants' make no separate argument that Plaintiff Lall failed to state a claim under Rule 8's standards in its moving brief or provide another reason that his claim under New York law should be dismissed. Instead, in reply, Defendants' suggest that even without application of the heightened 9(b) standard, Plaintiff fails to state a claim, noting that Plaintiff was still required to allege that "misrepresentations were the but-for cause of the alleged injury." Def. Reply at 12. Without any argument that the Complaint fails to do so here, the Court finds no reason to dismiss Plaintiff Lall's consumer fraud claim on behalf of himself and the New York sub-class. Therefore, the Court will deny Defendants' motion to dismiss Count VI.

### E. COUNT VIII: Negligent Misrepresentation

Defendants assert that there are conflicts between New Jersey, Indiana, New York, and Arizona law concerning negligent misrepresentation, and that each Plaintiffs' home states' law should govern. See Def. Brf. at 9. Notwithstanding, Defendants' only set forth differences between New York, New Jersey, and Arizona law. Then, in their substantive argument to dismiss Count VIII, Defendants contend only one argument that addresses any specific jurisdiction's law. That argument further negates any existing conflict, as Defendants argue that New York Plaintiff, Lall, and New Jersey Plaintiff, Amato, fail to

state a claim for the same reason: "the negligent misrepresentation claim must be dismissed as to Plaintiffs Amato and Lall due to Plaintiffs' failure to plead a special relationship beyond that of purchaser and manufacturer." Def Brf. at 30. In fact, Defendants' primarily argue that Plaintiffs' claim for negligent misrepresentation should be dismissed on separate and unrelated grounds to the conflicts they present to the Court.

Defendants argue that Plaintiffs' fail to state a claim for negligent misrepresentation because (1) the claim is barred by the economic loss doctrine, and (2) Plaintiffs' have not pled the claim with the requisite particularity.[13] Because Defendants fail to sufficiently explain a conflict between laws of the relevant jurisdictions, the Court finds that it is premature at this stage to engage in a conflict of laws analysis. As a result, the analysis of Plaintiffs' negligent misrepresentation claim will proceed under New Jersey law.

First, as previously ruled, Plaintiffs' have adequately pled both misrepresentations and omissions under the Rule 9(b) and 8 standards. For those same reasons stated above, Plaintiffs' Count VIII will not be dismissed on that basis. As to Defendants' economic loss argument, the Supreme Court of New Jersey has held that" [a]n incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance." <u>H. Rosenblum, Inc. v. Adler</u>, 461 A.2d 138, 142–43 (N.J. 1983) (citing <u>Pabon v. Hackensack Auto Sales, Inc.</u>, 164 A.2d 773 (N.J. Super. App. Div. 1960). The economic loss doctrine stands for the principle that a plaintiff who is dissatisfied with a product must bring a breach of contract or warranty claim. <u>Alloway v. Gen. Marine Indus., L.P.</u>, 632, 695 A.2d

---

[13] Defendants' contend that all states have adopted analogous economic doctrines and that they all require the claims to be pleaded with particularity.

264, 270 ( N.J. 1997) ("When the harm suffered is to the product itself, unaccompanied by personal injury or property damage, we concluded that principles of contract, rather than of tort law, were better suited to resolve the purchaser's claim. Consequently, we held that the U.C.C. provided the appropriate period of limitations.").

Notwithstanding, the doctrine does not always bar claims for negligent misrepresentation. In re Volkswagen Timing Chain Prod. Liab. Litig., 2017 WL 1902160, at *21 (applying, *inter alia*, New Jersey law; finding that "Plaintiffs' negligent misrepresentation claim [was] independent of any contractual claim. . . . [and] alleged that potential for personal injury in connection with the allegedly defective [product]"). Though it seems clear that the economic loss rule is not uniformly applied to negligent misrepresentation claims, the threshold question regarding the economic loss doctrine's applicability is "whether the allegedly tortuous conduct is extraneous to the contract." Atlas Acquisitions, LLC v. Porania, LLC, et al, No. 18-Cv-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019). Here, "Defendants' argue that Plaintiffs fail to include any allegations even suggesting that the negligent misrepresentation claim arises out of different facts than the warranty claims." Def. Brf. at 29.

Plaintiffs provide no direct argument that the economic loss doctrine should not bar their claim. Instead, their opposition highlights the factual allegations that pertain to Defendants superior knowledge of the Piston Ringland Defect, and Defendants duty to disclose. Compl. ¶¶ 75-76, 173-174. To that end, Plaintiff's argue Defendants' owed an independent duty to disclose, one outside of any contractual duty. See Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 280 (2002). Negligent misrepresentation claims based on economic loss, have survived dismissal in such situations. See Timing Chain Litig., 2017 WL 1902160, at *18. Here, Defendants do not contend that Plaintiffs' allegations

regarding an independent duty to disclose are insufficient, therefore, the Court will not dismiss Count VIII as precluded by the economic loss doctrine.

Defendants suggest that under New Jersey law, the Plaintiffs' negligent misrepresentation claim further fails for "failure to plead a special relationship beyond that of purchaser and manufacturer." Def. Brf. at 30. Defendants' cite to <u>Coba</u> for the proposition that there is no special relationship here to sustain a negligent misrepresentation claim. The Court disagrees with Defendants' argument.

First, the <u>Coba</u> court was not asked to analyze a claim for negligent misrepresentation. As explained in a later ruling, the court in that case ruled that the defendant, a car manufacturer,—in connection with "concealment tolling the statute of limitations"—did "not owe any common law duty to disclose to [plaintiff]." <u>Coba v. Ford Motor Co.</u>, No. 12-1622, 2016 WL 5746361, at *12 (D.N.J. Sept. 30, 2016), <u>aff'd,</u> 932 F.3d 114 (3d Cir. 2019), and <u>aff'd,</u> 932 F.3d 114 (3d Cir. 2019).  More specifically: "To the extent [plaintiff's] allegations of fraudulent concealment are based on silence or concealment, New Jersey courts will not imply a duty to disclose, <u>unless</u> such disclosure is necessary to make a previous statement true or the parties share a special relationship." <u>Coba v. Ford Motor Co.</u>, No. CIV. 12-1622, 2013 WL 244687, at *12 (D.N.J. Jan. 22, 2013). Thus, while "New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers," they have also found "specific ambiguous partial disclosures or statements by [manufactures]" may impose such duty. <u>Id.</u>; <u>Timing Chain Prod. Liab.</u>, 2017 WL 1902160, at *21 ("[A]ffirmative misrepresentations and omissions by a vehicle manufacturer may lie when the

manufacturer has exclusive or superior knowledge regarding the defect or if the defect relates to a safety concern.").

Here, Plaintiffs have included allegations that Defendants' disclosure was necessary to make their previous representations true. Compl. ¶¶ 61, 73, 120, 171. Defendants' do not address this argument in their reply. Furthermore, courts have permitted negligent misrepresentation claims between consumers and car manufactures. See <u>Dewey</u>, 558 F. Supp. 2d at 529. Therefore, the Court will permit the claim and will <u>deny</u> Defendants' motion as to Count VIII.

### F. COUNT IX: Injunctive and declaratory relief

In Count IX of the Complaint, Plaintiffs "request a declaratory judgment declaring that going forward all remedial work necessary to correct the defective engine incorporated in class engines together with all resulting damages are covered under the class vehicles' warranty." Compl. ¶ 246. For the reasons set forth <u>supra</u>, this Court will dismiss Plaintiffs' breach of warranty claim for failure to plead that the alleged defect was in fact covered under Subaru's Limited warranty for defects in materials and workmanship, and for failure to plead that the warranty was unconscionable. Accordingly, the Court will dismiss Count IX which seeks declaratory judgment. Furthermore, "declaratory relief and injunctive relief, as their names imply, are remedies, not causes of action." <u>Cole v. NIBCO, Inc.</u>, No. 3:13-CV-07871, 2015 WL 2414740, at *15 (D.N.J. May 20, 2015). In fact, Plaintiffs have pled injunctive relief including a declaratory judgment, to the extent permitted under surviving claims. As a result, a separate cause of action for such relief, is unnecessary. See <u>Chruby v. Kowaleski</u>, 534 F. App'x 156, 160 (3d Cir. 2013). Therefore, Defendants' Motion to Dismiss Count IX will be <u>granted</u>.

IV.     <u>Conclusion</u>

For the foregoing reasons, the Court will grant in part and deny in part

Defendants' Motion to Dismiss Plaintiffs' Complaint.


An appropriate Order shall issue.

Dated: December 5, 2019


       /S/   Joseph H. Rodriguez,
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE