UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMATO, ET AL | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 18-16118 |
| v. | : | **OPINION** |
| SUBARU OF AMERICA, INC., ET AL | : | |
| Defendants. | : | |

This matter is before the Court on Defendants Subaru of America, Inc. and Subaru Corporation's ("Subaru") Motion to Strike, or in the alternative, for Partial Dismissal of Plaintiffs' Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons stated below, the Court will grant in part and deny in part Subaru's Motion to Strike, and will deny Subaru's Motion to Dismiss.

## I. Factual and Procedural Background

The Court has recited the facts of this case extensively before [*see* Dkt. 23], and only discusses the facts relevant to the present motion here. This case is a putative class action where Plaintiffs allege that Subaru knowingly withheld information about defective engine pistons or piston ringlands in Impreza WRX and WRX STi vehicles produced between 2009 and 2018. [Dkt. 46-2]. On December 5, 2019, the Court issued an opinion and order on Subaru's motion to dismiss Plaintiffs' original complaint which "trim[med] some of the counts" alleged therein. [Dkt. 46-2 at 9; Dkt. 23, 24].

The parties then conferred about potential claims and parties that Plaintiffs might add in an amended complaint. [Dkt. 43-1 at 8, Dkt. 46-2 at 9]. The parties compromised and Plaintiffs filed their First Amended Complaint ("FAC") [Dkt. 30], which added claims on behalf of

1

existing Plaintiff Joseph Amato under the Georgia Fair Business Practices Act of 1975, Ga. Code Ann. §§ 10-1-390 et seq. (hereinafter "GFBPA"), and alternatively under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 et seq. (hereinafter "UTPCPL"). [*See* Dkt. 32]. Pursuant to the parties' compromise, Subaru answered the FAC on May 20, 2020 without moving to dismiss it. [Dkt. 34]. On July 2, 2020, Judge Williams issued a scheduling order which stated, in pertinent part, that "[t]he time within which to add named plaintiffs will expire on September 25, 2020. The time within which to seek all other amendments to the pleadings will expire on February 12, 2021." [Dkt. 38].

On September 22, 2020, Plaintiffs indicated to Subaru that they intended to further amend their pleadings and sent a proposed complaint to Subaru for review. [Dkt. 43-1 at 8]. Subaru did not consent to the changes. Plaintiffs filed their Second Amended Complaint ("SAC") on September 25, 2020 without seeking leave to amend their pleadings from the Court. [Dkt. 41]. The SAC asserts new claims under the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 et seq. ("MCPA"), and for negligent misrepresentation on behalf of a new Plaintiff, Andrew Hinshaw. [Dkt. 41].

Subaru moved strike the SAC or, in the alternative, to partially dismiss the SAC. [Dkt. 43]. Subaru's motion for partial dismissal challenges the claims added in both the FAC and the SAC discussed above. Plaintiffs ask the Court not to strike the SAC and to permit its filing *nunc pro tunc*. [Dkt. 46-2 at 11].

## II. Legal Analysis

### a. Motion to Strike

Subaru moves to strike the SAC under Federal Rule of Civil Procedure 12(f) because Plaintiffs did not obtain Subaru's consent or seek leave of the Court before filing the SAC as

2

Federal Rule of Civil Procedure 15(a) requires.[1]  [Dkt. 43].  Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

Plaintiffs argue that their filling was timely and proper because Judge Williams's July 2, 2020 order setting a September 25, 2020 deadline to "add named plaintiffs" and a September 8, 2020 conference call with Judge Williams effectively granted Plaintiffs leave to amend their complaint by that deadline.  [Dkt. 46-2 at 10–11].  Alternatively, Plaintiffs admit that they misinterpreted Judge Williams's order and communications and should be permitted to seek the Court's leave to file the SAC *nunc pro tunc* because no prejudice to Subaru will follow.  [Dkt. 46-2 at 11].

The Court disagrees with Plaintiffs' view that Judge Williams's July 2, 2020 scheduling order permitted Plaintiffs to amend their pleadings without Subaru's consent or leave from the Court.  Nothing in Judge Williams's order suspended Rule 15's requirements or otherwise authorized Plaintiffs to unilaterally add parties to their complaint as they saw fit.  The order simply set a deadline for Plaintiffs to add new parties consistent with Rule 15.  However, the Court accepts Plaintiffs' representation that their failure to properly move for leave to amend resulted from a misunderstanding on the part of Plaintiffs' counsel.  This case is still in its infancy, and permitting amendment at this point is unlikely to prejudice Subaru.  Thus, the Court will consider Plaintiffs' request for leave to amend *nunc pro tunc*.  *See Mitchell v. Overman*, 103

---

[1] Federal Rule of Civil Procedure 15 states that a party seeking to amend its complaint more than twenty-one days after serving the complaint or being served with an answer or "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

U.S. 62, 65, 26 L. Ed. 369 (1880) ("A nunc pro tunc order should be granted or refused, as justice may require in view of the circumstances of the particular case.").

### b. Futility of Amendment

Having determined that it will consider Plaintiffs' SAC, the issue now is whether Plaintiff Hinshaw's MCPA and negligent misrepresentation claims as alleged in the SAC are futile. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, dismissal under Rule 12(b)(6) should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Subaru first argues that Plaintiff Hinshaw's MCPA claim is futile because automobile sales are exempt from the MCPA. [Dkt. 43-1 at 11–12]. While Plaintiffs cite several cases to the contrary,[3] the Court finds that the weight of more recent authority supports Subaru's position. *See Gant v. Ford Motor Co.*, -- F. Supp. 3d --, No. 19-CV-12533, 2021 WL 364250, at *7 (E.D. Mich. Feb. 3, 2021) (collecting cases); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799–800 (E.D. Mich. 2019) (citing *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) and *Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015)). Plaintiff Hinshaw's MCPA claim is therefore futile.

---

[3] *In re Gen. Motors A.C. Mktg. and Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019); *State Farm Mut. Auto Ins. Co. v. BMW of N. Am. LLC*, 2009 WL 2447612, at *7 (E.D. Mich. Aug. 7, 2009); *Hoff v. Mercedes-Benz USA, LLC*, 2005 WL 3723201 at *8 (Mich. Cir. Ct. Dec. 30, 2005).

Subaru also argues that Michigan law applies to Plaintiff Hinshaw's negligent misrepresentation claim, and that this claim is futile because Hinshaw fails to plead privity with Subaru and to identify misrepresentations made by Subaru at the time of Hinshaw's purchase. [Dkt. 43-1 at 15–16].  Plaintiffs do not dispute that Michigan law applies to Hinshaw's negligent misrepresentation claim but argue that Michigan law does not require privity, and that they adequately plead negligent misrepresentations.  [Dkt. 46-2 at 17–18].

To state a claim for negligent misrepresentation under Michigan law, a plaintiff must allege that he "justifiably relied to his detriment on information prepared without reasonable care by one who owed [the plaintiff] a duty of care." *Johnston v. PHD FITNESS, LLC*, 2018 WL 646683 at *6 (E.D. Mich. Jan. 31, 2018).

As the elements make clear, Plaintiff Hinshaw need not plead privity with Subaru to state a claim for negligent misrepresentation.[4]  *See Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 919 (6th Cir. 1991) ("There is absolutely no fiduciary or privity requirement in order to establish the element of duty under this claim.").  Thus, the Court rejects Subaru's argument for dismissal on this ground.

Subaru also argues that Plaintiffs fail to "allege that [Subaru] made any representations to [Hinshaw] as part of a sales transaction" because "he purchased his car used from a third-party

---

[4] Plaintiffs are correct that the case upon which Subaru relies is one link in a chain of Michigan federal court decisions that conflate fraudulent misrepresentation and innocent misrepresentation under Michigan law.  Subaru cites *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 845 (E.D. Mich. 2010), which cites *Sipes v. Kinetra, LLC*, 137 F. Supp. 2d 901, 910 (E.D. Mich. 2001), which cites *M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 25–26, 585 N.W. 2d 33, 36–37 (1998).  *M & D Inc.* discusses the elements of innocent misrepresentation, *see M & D, Inc.*, 231 Mich. App. at 27–28, and Michigan courts distinguish these two causes of action.  *See Unibar Maint. Servs., Inc. v. Saigh*, 283 Mich. App. 609, 621, 769 N.W. 2d 911, 919 (2009) (distinguishing between innocent misrepresentation, which requires privity, and negligent misrepresentation, which does not).

6

seller." [Dkt. 43-1 at 16]. In other words, Subaru argues that, because Hinshaw purchased his used vehicle from a third-party seller, Subaru and/or Subaru representatives could not have provided misleading information. In response, Plaintiffs argue that the "misrepresentations relied upon by Hinshaw were set out in his class vehicle's Owner's Manual and Warranty & Maintenance Booklet materials," even if he did not rely on misrepresentations made by Subaru personnel. [Dkt. 46-2 at 18].

>With respect to Subaru owner's manuals generally, the SAC alleges that

>>[t]he defendants also negligently and recklessly misrepresented information in the class vehicles' owner's manuals that incorporated incorrect engine maintenance and service recommendations. The proposed class representatives and proposed class members reasonably and justifiably relied upon representations made by the defendants including information in the class vehicles' owner's manual that incorporated incorrect engine inspection and service intervals.

[Am. Compl. ¶¶ 254–55]. The Amended Complaint also alleges that "[t]he Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles do not contain any maintenance or service information for defective class engine pistons or piston ringlands." [Am. Compl. ¶ 10] (emphasis added). According to Plaintiffs, this failure to include ringland maintenance or service information rendered their owner's manuals misleading because their owner's manuals otherwise "have maintenance schedules that extend to 120,000." [Am. Compl. ¶ 10 n.9].

At this stage of the litigation, the Court must accept as true that Plaintiff Hinshaw reviewed the owner's manual for his Subaru vehicle and relied to his detriment on the manual's incomplete representations about "service intervals" for the engine pistons or piston ringlands. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (noting that a district Court "required to accept as true all factual allegations in the complaint and draw all inferences from

7

the facts alleged in the light most favorable" to the plaintiff when deciding a motion to dismiss). Thus, Plaintiffs do plead facts stating that Subaru misrepresented information to Plaintiff Hinshaw even though he did not purchase a vehicle directly from Subaru.

Next, Subaru argues that a "purchaser of a used vehicle from a third party with no relationship to the Subaru Defendants cannot state a claim for negligent misrepresentation." [Dkt. 43-1 at 16]. Subaru cites several out-of-circuit cases, none of which support this proposition. In *Jimenez v. DaimlerChrysler Corp.*, the Fourth Circuit overturned a jury's verdict in favor of the plaintiff on a negligent misrepresentation claim. 269 F.3d 439, 447 (4th Cir. 2001). The Fourth Circuit found that the plaintiff failed to offer any evidence that representations regarding vehicle safety in commercials for the defendant's vehicles were false or that plaintiff relied on these representations when purchasing the vehicle. *Id.* The Fourth Circuit did not hold as a matter of law that plaintiffs cannot bring negligent misrepresentation claims against automobile manufacturers. In *Wright v. Kia Motors Am. Inc.*, the district court dismissed the plaintiff's negligent misrepresentation claim for failing to plead a special relationship beyond the common law duty of reasonable care, which Oregon law requires. No. CIV. 06-6212-AA, 2007 WL 316351, at *4–5 (D. Or. Jan. 29, 2007). However, as discussed above, Michigan law does not require any such special relationship.

Subaru adds that "[u]sed purchasers are not among the class of persons that the Subaru Defendants could have reasonably foreseen as relying on the accuracy of any representations made in materials or statements put into circulation to address new vehicle purchasers." [Dkt. 43-1 at 16]. Subaru does not cite any controlling authority for this proposition. Moreover, foreseeability is a question of fact for juror consideration under Michigan law. *Composto v.*

*Albrecht*, 328 Mich. App. 496, 503, 938 N.W. 2d 755, 760 (2019), *appeal denied*, 505 Mich. 995, 939 N.W. 2d 258 (2020).

In sum, Plaintiffs have adequately pled a negligent misrepresentation claim for Plaintiff Hinshaw. As a result, this claim is not futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. However, for the reasons discussed above, Plaintiff Hinshaw's MCPA claim is futile. The Court will permit Plaintiffs to file a second amended complaint that includes Plaintiff Hinshaw's negligent misrepresentation claim only.

### c. Motion to Dismiss

Beyond moving to strike claims alleged for the first time in the SAC, Subaru moves to dismiss Plaintiff Amato's GFBPA and/or UTPCPL claims alleged for the first time in the FAC and realleged in the SAC. [Dkt. 43-1 at 16–20]. Plaintiffs first argue that Subaru should be estopped from challenging Plaintiff Amato's GFBPA and/or UTPCPL claims here because, pursuant to the above-referenced compromise between the parties, Plaintiffs included these claims in the FAC and Subaru answered the FAC without moving to dismiss these claims. [Dkt. 46-2 at 10]. The Court gives this argument little weight as Plaintiffs disregarded this same compromise when they filed the SAC without Subaru's consent.

Plaintiffs plead Amato's UTPCPL claim as an alternative to his GFBPA if the Court determines that Pennsylvania law applies to Plaintiff Amato rather than Georgia law. Subaru argues that neither the UTPCPL claim nor the GFBPA claim can survive but does not brief the choice-of-law issue underlying Plaintiffs' alternative pleading. Plaintiffs also omit a choice-of-law analysis. Typically, the Court would apply New Jersey's choice-of-law rules to determine whether Georgia or Pennsylvania law would apply to Plaintiff Amato. *See Powell v. Subaru of Am., Inc.*, No. 1:19-CV-19114, 2020 WL 6886242, at *10 (D.N.J. Nov. 24, 2020) ("In diversity

9

cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling." (citing *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013))). But because neither party has briefed this choice-of-law issue or explained why one state's statute should apply instead of the other's, the Court declines to decide which state's law applies until the parties fully brief the issue with the benefit of a complete factual record. *See Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (noting that New Jersey choice-of-law analysis is "fact intensive" and deferring its choice-of-law decision at the motion to dismiss stage).

### i. GFPBA

Subaru argues that Plaintiff Amato cannot bring his GFBPA claim on behalf of a class of other Plaintiffs because the GFBPA only permits individual claims. [Dkt. 43-1 at 16–17]. Subaru points to language in the GFBPA which states that "'[a]ny person who suffers injury or damage[] as a result of a violation ... of [the Georgia FBPA] as a result of consumer acts or practices in violation of this part ... may bring an action individually, but not in a representative capacity….'" [*Id.*] (quoting Ga. Code Ann. § 10-1-399(a)). Plaintiffs argue that, under the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398 (2010), Federal Rule of Civil Procedure 23[5] permits Plaintiff Amato to bring his GFBPA claim as a class claim. The Court agrees with Plaintiffs.

In *Shady Grove*, a Supreme Court plurality held that Rule 23 permitted the plaintiff in federal court on diversity jurisdiction to bring state-law claims on a class basis even where a state

---

[5] Federal Rule of Civil Procedure 23 sets forth the requirements for bringing a class action suit in federal court. *St. Louis Chiropractic v. Fed. Ins. Co.*, No. CIV.A.07-3110(JAP), 2008 WL 4056225, at *6 (D.N.J. Aug. 26, 2008), *aff'd on other grounds sub nom. St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3d Cir. 2009).

statute barred class actions. 559 U.S. at 416. The *Shady Grove* Court confronted a New York statute which stated in part that "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." *See id.* at 396 n.1 (quoting N.Y. Civ. Prac. Law Ann. § 901(b) (West 2006)). This class action bar was not part of a particular statutory regime and did not apply to a specific cause of action, but applied broadly to "penalties" sought under any New York law, federal law, or the law of any other state. *Id.* at 432 (Stevens, J., concurring). The plaintiffs sought to form a class under Federal Rule of Civil Procedure 23, and the lower courts determined that the plaintiffs sought only to recover "penalties." *Id.* at 397. Thus, the issue before the Supreme Court was whether the plaintiffs could state a class claim in federal court under Rule 23 to recover penalties when the New York statute precluded class actions seeking penalties. *Id.* at 398.

To resolve this issue, the Supreme Court had to answer two questions: whether the New York statute and Rule 23 conflicted because they both addressed the same procedural issue and, if so, whether Rule 23 exceeded Congress's authority under the Rules Enabling Act.[6] *Id.* at 398. A Supreme Court majority agreed that Rule 23 conflicted with the New York statute. However, no majority agreed on how to properly resolve the Rules Enabling Act question. Writing for a four-member plurality, Justice Scalia found that Rule 23 did not violate the Rules Enabling Act.

---

[6] The Rules Enabling Act states, in pertinent part, that

    (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

    (b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

28 U.S.C. § 2072.

*Id.* at 407–08.  Justice Scalia reasoned that courts must focus on the substantive or procedural nature of the *federal rule* at issue, not the substantive or procedural nature of the state law.  *Id.* at 410.  Justice Scalia categorically determined that "the validity of a Federal Rule depends entirely upon whether it regulates procedure.  If it does, it is authorized by § 2072 and is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-created rights."  *Id.* (citations omitted).   Applying this approach, Justice Scalia concluded that Rule 23 was procedural in nature, did not violate the Rules Enabling Act, preempted the New York statute, and permitted the plaintiffs to bring class claims.  *See id.* at 415–16.

Justice Stevens agreed that Rule 23 and the New York statute conflicted and that Rule 23 did not violate the Rules Enabling Act, but disagreed with the plurality's categorical Rules Enabling Act analysis.  According to Justice Stevens, courts must consider the federal rule *and* state law at issue and determine whether the state law—even if it is facially procedural in nature—is so "intertwined with a state right or remedy that it functions to define the scope of the state-created right."  *Id.* at 423.  Justice Stevens found that the analysis does "not necessarily turn on whether the state law at issue takes the *form* of what is traditionally described as substantive or procedural.  Rather, it turns on whether the state law actually is part of a State's framework of substantive rights or remedies."  *Id.* at 419 (emphasis in original) (citations omitted).  Justice Stevens reviewed the New York statute's legislative history, its application by New York courts, and its role in New York's statutory regime more broadly.  He found that, because the New York statute

> applies not only to claims based on New York law but also to claims based on federal law or the law of any other State … [i]t is … hard to see how § 901(b) could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies.

12

*Id.* at 432. Thus, Justice Stevens concluded that New York's statute was not "intertwined" with any substantive right and, therefore, that Rule 23 did not "abridge, enlarge, or modify" any substantive state right. *Id.* at 436.

Courts in this district and elsewhere have disagreed on how to apply *Shady Grove*'s plurality decision to class action bars where, as here, the class action bar is part of a specific state statute. Some have adopted Justice Scalia's categorical approach and found that "*Shady Grove* instructs that state consumer protection class action bars do not apply to those claims if brought as a class action under Federal Rule of Civil Procedure 23." *In re Mercedes-Benz Emissions Litig.*, No. CV 16-881 (JLL)(JAD), 2019 WL 413541, at *26 (D.N.J. Feb. 1, 2019), *cert. denied*, No. CV 16-881 (SDW)(JAD), 2019 WL 2591158 (D.N.J. June 25, 2019), *and vacated and remanded*, 797 F. App'x 695 (3d Cir. 2020) (citing *In re Liquid Aluminum Sulfate Antitrust Litig.*, 16-md-2687, 2017 WL 3131977, at *25 (D.N.J. July 20, 2017)); *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *24 (D.N.J. May 8, 2017) (citing *In re Hydroxycut Marketing and Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014)). Others have applied Justice Stevens's approach to reach the opposite conclusion, finding that "the specific inclusion of the class action bar within [state] consumer protection statutes ... evinces a desire by the state legislature to limit not only the form of the action but also the remedies available, placing those bars squarely within Justice Stevens' concurrence." *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416 (D.N.J. 2018) (quoting *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-4427, 2017 WL 5201079, at *10, 2017 U.S. Dist. LEXIS 186408, at *23 (E.D.N.Y. Nov. 8, 2017)). *See also In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 389 (D.N.J. 2018) (same). Applying Justice Stevens's approach, these courts found that including a class action bar within a state statute creates a substantive right that

13

trumps Rule 23 under the Rules Enabling Act. *See In re Effexor Antitrust Litig.*, 357 F. Supp. 3d at 389–90.

While the Third Circuit has applied *Shady Grove* to class action bars like the one at issue here, it has endorsed Justice Scalia's approach elsewhere. In *Nuveen Municipal Trust ex rel. Nuveen High Yield Municipal Bond Fund v. WithumSmith Brown, P.C.*, the Third Circuit considered, among other things, whether New Jersey's Affidavit of Merit statute (the "AOM statute")[7] could be applied in federal court without voiding Federal Rules of Civil Procedure 8 and 9. 692 F.3d 283, 302–03 (3d Cir. 2012). The Third Circuit interpreted *Shady Grove* to say that courts must focus not "on 'the substantive or procedural nature or purpose of the affected state law,' but rather [the] 'substantive or procedural nature of the Federal Rule'" when determining whether a federal rule preempts state law. *Id.* at 303 (quoting *Shady Grove*, 559 U.S. at 410). To be clear, *Nuveen* court did not follow Justice Stevens's approach and analyze the substantive or procedural nature of the AOM statute. *See also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 265 (3d Cir. 2012) (applying *Shady Grove* in a Fair Labor Standards Act case and finding that "[u]nder the [*Shady Grove*] plurality's view, any supposed substantive purpose underlying § 216(b) is irrelevant, and we need only determine whether Rule 23 'really regulates procedure,' which the Court has already concluded it does."); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 409 (3d Cir. 2013), *as amended* (July 11, 2013), as amended (July 22, 2013) (applying Justice Scalia's approach to analyze the relationship between Federal Rule of Civil Procedure 68 and Resources Conservation and Recovery Act).

---

[7] The AOM statute, N.J. Stat. Ann. §§ 2A:53A–26 et seq., "requires the timely filing of an affidavit of merit attesting to the viability of claims in certain actions against professionals." *Nuveen*, 692 F.3d at 287. Failure to provide the required affidavit can result in a complaint's dismissal for failure to state a cause of action. N.J. Stat. Ann. §§ 2A:53A–29.

14

While the *Nuveen* court did not apply *Shady Grove* to Rule 23 or class-action bars contained within state statutes, it implicitly found that district courts should follow Justice Scalia's approach when evaluating potential conflicts between federal rules and state laws more broadly. Taking this approach and focusing only on the procedural or substantive nature of Rule 23, it is clear that "Rule 23, not state law, governs the availability of class action treatment of Plaintiff's claims." *Ambulatory Surgical Ctr. of Somerset v. Allstate Fire Cas. Ins. Co.*, No. CV 16-5378, 2017 WL 5053919, at *2 (D.N.J. Nov. 3, 2017) (quoting *Fitzgerald v. Gann Law Books, Inc.*, 956 F. Supp. 2d 581, 587 (D.N.J. 2013)). Thus, assuming for the purposes of this opinion that Georgia law applies to Plaintiff Amato, Plaintiff Amato may bring his GFBPA claim as a class claim.

### ii. UTPCPL

Subaru argues that Plaintiff Amato's UTPCPL claim should be dismissed under Pennsylvania's "economic loss rule." [Dkt. 43-1 at 18–20]. The economic loss rule precludes a plaintiff from recovering purely pecuniary damages for tort claims where the defendant's duty to the plaintiff arises through a contract. *Dukich v. IKEA US Retail LLC*, No. CV 20-2182, 2021 WL 131284, at *3 (E.D. Pa. Jan. 14, 2021) (quoting *Dittman v. UPMC*, 196 A.3d 1036, 1038 (Pa. 2018)).

Subaru relies on *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) to argue that the economic loss rule bars Plaintiff Amato's UTPCPL claim. In *Werwinski*, the Third Circuit predicted that Pennsylvania Supreme Court—which had not yet addressed the issue— would apply the economic loss rule to bar UTPCPL claims. *Werwinski v. Ford Motor Co.*, 286 F.3d at 675. But "'[s]ince *Werwinski* issued, the Pennsylvania courts have spoken. They have held that the economic loss doctrine does not apply to UTPCPL claims.'" *Lovelace v.*

15

*Nationwide Mut. Ins. Co.*, No. CV 18-2701, 2018 WL 3818911, at *3 (E.D. Pa. Aug. 10, 2018) (quoting *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427 (E.D. Pa. 2015)). *See also Knight v. Springfield Hyundai*, 2013 PA Super 309, 81 A.3d 940, 952 (2013) ("The claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims."); *Dixon v. Nw. Mut.*, 2016 PA Super 186, 146 A.3d 780, 790 (2016) ("Dixon's UTPCPL claim is not barred by the economic loss doctrine." (citing *Knight*, 81 A.3d at 952)).

After reviewing state and federal court decisions, the Court finds that there is "persuasive evidence" that Pennsylvania law has changed since the Third Circuit decided *Werwinski*, that the *Werwinski* court's prediction about Pennsylvania law was incorrect, and that the Court is not bound to *Werwinski*'s holding. *Lovelace*, 2018 WL 3818911, at *3–*4 (finding a "clear change in law that has proved incorrect the Third Circuit's prediction in *Werwinski*" and permitting UTPCPL claims (citations omitted)); *Catena v. NVR, Inc.*, No. 2:20-CV-00160-MJH, 2020 WL 3412348, at *7 (W.D. Pa. June 22, 2020) ("This Court is persuaded that it should also follow the precedents of *Knight* and *Dixon*. Therefore, the Plaintiffs' UTPCPL claim is not barred by the economic loss or gist of the action doctrine."). Thus, the Court will deny Subaru's motion to dismiss Plaintiff Amato's UTPCPL claim under the economic loss rule.

### III. Conclusion

For the reasons discussed above, the Court will deny Subaru's Motion to Strike as to Plaintiff Hinshaw's negligent misrepresentation claim but grant this motion as to his MCPA claim. The Court will also deny Subaru's Motion to Dismiss Plaintiff Amato's GFBPA and

16

UTPCPL claims.  Plaintiffs may file a second amended complaint including Plaintiff Hinshaw's negligent misrepresentation claim.  An appropriate order shall follow.


May 27, 2021                                                              /s/ Joseph H. Rodriguez
                                                                        Hon. Joseph H. Rodriguez, U.S.D.J.