LAW OFFICES

## KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.

### 135 CHESTNUT RIDGE ROAD, SUITE 200
### MONTVALE, NEW JERSEY 07645

BARRY S. KANTROWITZ**•
GARY S. GRAIFMAN**
RANDY J. PERLMUTTER**
MELISSA R. EMERT*
KATE CARBALLO**++

_____

AMANDA N. CASELLA**
DANIEL C. EDELMAN**
DANIEL E. MARINO +
BRANDON W. ROTHSTEIN**
KELLYANN RUBINO**
SAM B. SMITH**

_____

TEL (201) 391-7000
FAX (201) 307-1086
www.kgglaw.com

NEW YORK
16 SQUADRON BLVD, STE 106
NEW CITY, NY 10956
TEL (845) 356-2570
FAX (845) 356-4335

OF COUNSEL
ROBERT A. LUBITZ**
STEVEN B. ROTHSCHILD*
JEFFREY P. ORLAN, P.A., P.C.*•
ARNOLD REITER**

** N.Y. & N.J. BAR
* N.Y. BAR ONLY
+ N.J. BAR ONLY
• FLA. BAR
++ NJ CERTIFIED CIVIL TRIAL
ATTORNEY

July 21, 2025

### *Via ECF*

Hon. Karen M. Williams
U.S. District Judge
Mitchell H. Cohen U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101-0888

> Re:  *Amato, et al. v. Subaru of America, Inc., et al.,*
>       *Civil Action No.: 1:18-CV-16118-KMW-AMD* ("*Amato*")
>
>       *Aquino v. Subaru of America, Inc., et al.,*
>       *Civil Action No.: 1:22-CV-00990-KMW-AMD* ("*Aquino*")

Dear Judge Williams:

We represent Plaintiffs in the above-referenced consolidated consumer class actions. We write in opposition to the submission by Defendants[1] premised on the recent Sixth Circuit opinion *Speerly, et al. v. General Motors, LLC*, No. 23-1940, __ F.4th__, 2025 WL 1775640 (6th Cir. June 27, 2025) ("*Speerly*"), which they argue is relevant supplemental authority in in the pending class certification motion.  (*Amato,* ECF # 220). We respectfully request that the Court reject this submission as irrelevant for the considerable reasons which follow.

As the Court is aware, the two actions against Subaru assert claims for purchasers and lessees of class vehicles in four (4) states: New York, Arizona, Indiana and Michigan and seeks to certify classes based on the consumer fraud statutes of three of the states (New York GBL § 349, Arizona AFCA and the Indiana IDCSA) and common law claims of negligent misrepresentation.

_____

[1] "Defendants" herein are Subara of America, Inc. and Subaru Corporation (both are also referred to herein as "Subaru").

Hon. Karen M. Williams
July 21, 2025
Page 2

The Michigan claim asserts only a negligent misrepresentation claim under Michigan common law.

In contrast, the overriding issue in *Speerly*—one which the Sixth Circuit continually referenced throughout the opinion—was that the multi-state classes certified by the district court were sprawling and unmanageable. Those claims involved 26 state-wide subclasses and a total of 59 state-law claims which consisted of an amalgam of claims for express warranty, implied warranty, consumer protection laws and fraudulent omission.

The Sixth Circuit expressed throughout the *Speerly* opinion its concern that the claims were simply too diverse and wide-ranging for a jury to determine the issues of law and fact on a class-wide basis.[2] For example, the court noted in starting out its predominance analysis at *8 that:

> *First*, there are high costs to a legal system that asks one district court to understand and apply nearly 60 causes of action across 26 states. In taking on that task, the court must follow the decisions of the state's highest court when that court has addressed the relevant issue. [internal citation omitted].

The court again noted the logistical predicament involving 59 claims from 26 states *(Id.* at *8):

> A bulky multi-state class action forces a federal court to play "central planner" to 26 state economies under "one case, one court, one set of rules," and "one settlement price for all involved." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002).
>
>         *         *         *
>
> Would the court use hundreds of citizens to form 26 juries, one for each state? If it did, how would it demarcate subtle differences in state laws to comply with the Seventh Amendment's command that "no fact tried by a jury, shall be otherwise reexamined"? More complicated still, would the court empanel one jury to crown the winner, what amounts to empowering six Michigan citizens to predict 59 rules of the road for 26 state commercial and consumer norms? If the court took this approach, must it face head-on the "impossible task of instructing a jury on the relevant law" and provide 59 pages of verdict forms? . . . . Rule 23(b)(3)'s mandate that we consider "the likely difficulties in managing a class action" in assessing predominance, and the reality that "federal class action[s] based on state law" "undermine federalism," *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745

---

[2] Notably, the court held that all of the other Rule 23(a) and (b) factors were present: "[A]t this stage, we have no reason to dwell on many of the district court's class-action determinations: numerosity, typicality, adequacy of representation, and superiority. No one challenges the district court's handling of them in this interlocutory appeal." *Id*. at *4.

Hon. Karen M. Williams
July 21, 2025
Page 3

(7th Cir. 2008)—deserve serious consideration before certifying such a large class.

In the consolidated Subaru cases here, the concerns of the *Speerly* court, clearly expressed as "the likely difficulties in managing" the class action (*id.* at *8) are simply not present. Subaru involves only three state consumer protection statutes and the common law claim of negligent misrepresentation. In addition, the class vehicles are inter-related vehicle models—the WRX and the WRX STi. Thus, the issues of determining whether a "defect" existed with regard to the engine pistons and whether there was a material omission by Subaru in withholding that information from purchasers and lessees are simple questions which a jury can determine in an efficient manner in the context of a class action trial.

In their motion to consolidate the *Amato* and *Aquino* actions, defense counsel acknowledged that "[g]iven the nearly perfect overlap between these two cases, consolidation, if implemented appropriately, would serve as a particularly effective means of promoting judicial economy." *Amato,* ECF 85-1 at 12.

*Second*, because in *Speerly* there were multiple claims asserted for each state class (*e.g.*, breach of implied warranty, breach of express warranty, consumer protection law violations and fraudulent omission), the Sixth Circuit held that the issue of whether the subject transmission contained a "defect" could be different for each cause of action, which would then, again, be multiplied *ad infinitum* given the fact there were 59 class claims. For example, with regard to whether the transmission has a defect, the court posed the following questions: "Do the plaintiffs mean 'defect' in the products-liability sense because it is "unreasonably dangerous"? [citation omitted] Or do they mean 'defect in an implied warranty' sense, as in unfit for the 'ordinary purposes for which' the accused products 'are used'? *Id.* Or do they mean defect in the sense of a consumer-protection statute, which asks if the feature 'diminished' the 'value of the product'?" *Id.* at *6.

In contrast, the instant Subaru cases are comprised of only three consumer protection claims and one negligent misrepresentation claim. These claims are similar in regard to vehicle defect and damages analysis in the form of diminished value or a price premium. The overwhelming logistical impediments the Sixth Circuit analyzed in *Speerly* simply do not exist here as there are limited claims and only two related class vehicles.

Finally, the Sixth Circuit recognized *Speerly* commonality issues should be focused on the elements of the claims asserted:

> To ensure the [common] questions, whether factual or legal, are central, a court must ensure that they "affect at least one element" of all 59 claims. The court "must walk through each cause of action" and "identify the relevant elements." . . . only an element-oriented analysis permits the court to identify which questions meaningfully move the lawsuit forward.

Hon. Karen M. Williams
July 21, 2025
Page 4

*Id*. at \*5. (cleaned up) (citations omitted).

\*          \*          \*

> All of this suggests that, without an element-by-element commonality analysis, this court cannot effectively review which questions are truly central to which claims. We vacate and remand for the district court to conduct an element-by-element analysis that assesses how each question is common by fitting it into each claim.

*Id*.at \*7.

Here, by contrast, Plaintiffs did exactly that in their Memorandum of Law in Support of Class Certification ("Cert. Memo") (*Amato,* ECF #216-1 at 35-41)[3] which addressed the commonality of evidence with respect to determining classwide damages.  The memorandum analyzes common evidence supporting each claim.  *Id*. at 41. The New York § 349 claim is analyzed at pp. 41-43.  The Indiana IDCSA is analyzed at pp. 43-44.  The Arizona Consumer Fraud Act elements are analyzed at pp. 44-46.  Negligent misrepresentation claims are analyzed at pp. 46-51.

The Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (ECF #188) ("Reply Memo.") at p. 17 analyzes "The Liability Issues For Each Claim May be Established with Common Evidence."  In addition, the Reply Memo. analyzes the evidence as it relates to each element of each claim.  Ironically, while Plaintiffs' Cert. Memo and Reply Memo followed the same analysis as suggested by the non-binding Sixth Circuit *Speerly* opinion, Subaru failed to do so in opposition to the class certification motion.  Plaintiffs' Reply Memo even took notice and singled this important deficiency out to this Court: "Defendants have failed to analyze the proof which would be required for each element of the asserted claims and whether proof of that element is susceptible to classwide evidence.  Defendants also fail to address the elements for these claims. . . ." (Reply Memo at p. 16).  Thus, it is Subaru which failed to follow the analysis suggested by the court in *Speerly*, not Plaintiffs.

One missing consideration or discussion in the *Speerly* decision is the potential for use of a bellwether certification process or bellwether state class trial, in which only a few similar states are placed up for class certification and, ultimately, trial.  This methodology has been successfully used recently in a number of multi-state class actions which encompassed a large number of states and state law claims.  Such methodology is not needed here given that there are only four states involved and only one statutory claim and one common law claim in each of those jurisdictions involved.  But such lack of such discussion in *Speerly* highlights a significant omission in the Sixth

---

[3] Pursuant to the Court's Order dated March 26, 2025 (*Amato,* ECF # 213), Plaintiffs amended their Cert. Memo to supplement their briefing only as to ascertainability. As in their original Cert. Memo (*Amato,* ECF # 178-1), Plaintiffs' amended Cert. Memo addresses the commonality of evidence to determine classwide damages, and analyzes common evidence supporting each claim.

Hon. Karen M. Williams
July 21, 2025
Page 5


Circuit decision, which admittedly may have arisen as a result of the failure of counsel to argue for it. However, because the court remanded the matter for further consideration by the district court, it is possible it will be raised there and the matter proceed as a certified class to some extent as to a bellwether state class.

This last consideration is important to note. The procedural context of the decision in *Speerly* was an interlocutory appeal in which the court remanded the matter back to the district court to make factual findings consistent with the opinion. *Id.* at *22. It is probable the district court will certify more focused classes and those classes may even include significantly more state-wide classes than the modest four (4) state class here.

In sum, the *Speerly* decision was based in large part on the fact that there were 26 state classes which asserted a total of 59 claims which the Sixth Circuit held presented insurmountable issues with predominance and overall class management as certified by the district court. In addition, the court was concerned with the failure of the district court to perform an element-by-element analysis, which was, in fact, done here by Plaintiffs. Given that Subaru includes two related vehicle models, three state consumer law claims and one negligent misrepresentation claim, it is respectfully submitted that the Court reject the Defendants' tender of the interlocutory *Speerly* decision as controlling law and certify the proposed classes here.


Respectfully submitted,

Gary S. Graifman


GSG/lm
cc: All counsel of record